# EXHIBIT C

Exhibit C

10/9/2019 1:14 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37513094
By: Lisa Thomas
Filed: 10/9/2019 1:14 PM

CAUSE NO. 201967218

| | |
|---|---|
| KENNETH J. and RENA A. KURATKOS, | IN THE DISTRICT COURT |
| Plaintiffs, | |
| vs. | 334TH JUDICIAL DISTRICT |
| ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, | HARRIS COUNTY, TEXAS |
| Defendant. | |

## DEFENDANT'S ORIGINAL ANSWER AND REQUEST FOR DISCLOSURE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY, Defendant in the above styled and numbered cause of action, and in response to the complaints filed against it, would respectfully show unto this Honorable Court and Jury as follows:

### I.

### GENERAL DENIAL

At this time, Defendant asserts a general denial to Plaintiffs' Original Petition and all amended and/or supplemental petitions, as authorized by Rule 92, Texas Rules of Civil Procedure, and respectfully requests the Court and jury to require Plaintiffs to prove the claims, charges and allegations, by a preponderance of the evidence, as required by the Constitution and the laws of the State of Texas.

### II.

### SPECIFIC DENIALS

Plaintiffs' claims are barred or limited, in whole or in part, by policy exclusions and/or limitations which are listed in the policy made the basis of this suit.

---

Kuratkos, et al. vs. Allstate
Defendant's Original Answer and Request for Disclosure
0472513001.1

Page 1 of 4

Plaintiffs failed to comply with certain conditions precedent to the policy prior to filing this lawsuit.

Plaintiffs failed to allege conduct warranting imposition of exemplary or punitive damages under applicable state law.

Plaintiffs' claims are barred, in whole or in part, because the losses alleged by Plaintiffs were proximately caused in whole or in part by the fault, negligence, or failure to mitigate damages by Plaintiffs.

Defendant hereby gives notice that it intends to rely upon such other defenses as may become available or apparent during the course of discovery and thus reserve the right to amend this answer.

## III.

Pursuant to Texas Rules of Civil Procedure, Defendant requests that Plaintiffs disclose within thirty days of service of this request, the information and material described in Rule 194.2(a) through (l).

If this case was filed as an Expedited Action under TRCP 47(c)(1) and/or TRCP 190.2, Defendant further requests disclosure of any and all documents, electronic information, and tangible items that you have in your possession, custody or control and which may be used to support your claims or defenses.

## IV.

Defendant formally requests a jury trial pursuant to Rule 216 of the Texas Rules of Civil Procedure and tenders the jury fee.

## V.

## <u>DESIGNATED E-SERVICE EMAIL ADDRESS</u>

The following is the undersigned attorney's designation of electronic service email address

Kuratkos, et al. vs. Allstate
Defendant's Original Answer and Request for Disclosure
0472513001.1

Page **2** of **4**

for all electronically served documents and notices, filed and unfiled, pursuant to Tex. R. Civ. P. 21(f)(2) & 21(a). (HoustonLegal@allstate.com). This is the undersigned's ONLY electronic service email address, and service through any other email address will be considered invalid.

WHEREFORE, PREMISES CONSIDERED, Defendant prays that the Plaintiffs recover nothing of and from the Defendant by reason of this suit, that Defendant be discharged without delay, with costs of court, and for such other and further relief, both general and special, at law and in equity, to which Defendant may be justly entitled, and for which Defendant will in duty bound, forever pray.

Respectfully submitted,

SUSAN L. FLORENCE & ASSOCIATES

**KIMBERLY BLUM**
TBN: 24092148

811 Louisiana St Ste 2400
Houston, TX 77002-1401
HoustonLegal@allstate.com
(713) 336-2812
(877) 684-4165 (fax)

ATTORNEY FOR DEFENDANT
ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY

Kuratkos, et al. vs. Allstate
Defendant's Original Answer and Request for Disclosure
0472513001.1

Page **3** of **4**

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to Rules 21. and 21a. of the Texas Rules of Civil Procedure, I hereby certify that the

original of Defendant's Original Answer has been filed with the clerk of the court in writing, and a true and

correct copy of Defendant's Original Answer has been delivered to all interested parties on the 9th day of

October, 2019, to:

James D. Ellman
Scopelitis, Garvin, Light, Hanson & Feary, P.C.
777 Main Street, Suite 3450
Fort Worth, TX 76102

AND

Eric R. Benton
LORANCE THOMPSON
2900 N. Loop West, Fifth Floor
Houston, Texas 77092

ATTORNEYS FOR PLAINTIFFS                     *VIA E-SERVE*

_____
**KIMBERLY BLUM**

Kuratkos, et al. vs. Allstate
Defendants' Original Answer and Request for Disclosure
0472513001.1                                                                 Page **4** of **4**

Case No.  201967218

**DCORX**

IN THE DISTRICT COURT OF

KURATKOS, KENNETH J      *

vs.      *      HARRIS COUNTY, TEXAS

ALLSTATE VEHICLE AND PROPERTY      *      334th      JUDICIAL DISTRICT

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1. **11/30/20**    **JOINDER.** All parties must be added and served, whether by amendment or third party practice, by this date. THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.    **EXPERT WITNESS DESIGNATION.** Expert witness designations are required and must be served by the following dates. The designation must include the information listed in Rule 194.2(f). Failure to timely respond will be governed by Rule 193.6.
   (a) **11/30/20**    Experts for parties seeking affirmative relief.
   (b) **12/28/20**    All other experts.

3.    **STATUS CONFERENCE.** Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date. TIME:
   Failure to appear will be grounds for dismissal for want of prosecution.

4.    **DISCOVERY LIMITATIONS.** The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
   (a)    Total hours per side for oral depositions.
   (b)    Number of interrogatories that may be served by each party on any other party.

5.    **ALTERNATIVE DISPUTE RESOLUTION.**
   (a)    By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR. If no agreement or objection is filed, the court may sign an ADR order.
   (b) **03/15/21**    ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.    **DISCOVERY PERIOD ENDS.** All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement. Incomplete discovery will not delay the trial.

7.    **DISPOSITIVE MOTIONS AND PLEAS.** Must be heard by oral hearing or submission.
   (a)    If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
   (b) **01/29/21**    Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
   (c)    Rule 166a(i) motions may not be heard before this date.

8. **01/29/21**    **CHALLENGES TO EXPERT TESTIMONY.** All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9. **02/26/21**    **PLEADINGS.** All amendments and supplements must be filed by this date. This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.    Parties shall be prepared to discuss all aspects of trial with the court on this date.
    TIME:      Failure to appear will be grounds for dismissal for want of prosecution.

11. **03/29/21**    **TRIAL.** If not assigned by the second Friday following this date, the case will be reset.

SIGNED

JAMES DANIEL ELLMAN
777 MAIN ST STE 3450
FORT WORTH TX 76102-5374      24106749

5

STEVEN KIRKLAND
Judge, 334TH DISTRICT COURT
Date Generated 10/10/2019

JCVO02D
rev.10272014

THE TRIAL DATE LISTED IN ITEM 11 ON THE FRONT OF THIS ORDER IS THE DATE YOUR TWO-WEEK DOCKET BEGINS. YOU WILL BE CONTACTED BY PHONE BY COURT PERSONNEL WITH AN EXACT DATE AND TIME TO APPEAR ONCE THE CASE IS ASSIGNED TO TRIAL.

FOR ADDITIONAL INFORMATION, COURT PROCEDURES AND A COPY OF THE STANDING ORDER IN LIMINE GOVERNING ALL JURY CASES, PLEASE REFER TO OUR WEBSITE AT WWW.JUSTEX.NET

Case No.  201967218

**DCORX**

| | | |
|---|---|---|
| KURATKOS, KENNETH J | * | IN THE DISTRICT COURT OF |
| vs. | * | HARRIS COUNTY, TEXAS |
| ALLSTATE VEHICLE AND PROPERTY | * | 334th    JUDICIAL DISTRICT |

## DOCKET CONTROL ORDER

The following docket control order shall apply to this case unless modified by the court. If no date is given below, the item is governed by the Texas Rules of Civil Procedure.

1. **11/30/20**  **JOINDER**. All parties must be added and served, whether by amendment or third party practice, by this date. THE PARTY CAUSING THE JOINDER SHALL PROVIDE A COPY OF THIS DOCKET CONTROL ORDER AT THE TIME OF SERVICE.

2.  **EXPERT WITNESS DESIGNATION**. Expert witness designations are required and must be served by the following dates.   The designation must include the information listed in Rule 194.2(f).   Failure to timely respond will be governed by Rule 193.6.
   (a) **11/30/20**  Experts for parties seeking affirmative relief.
   (b) **12/28/20**  All other experts.

3.  **STATUS CONFERENCE**.  Parties shall be prepared to discuss all aspects of the case, including ADR, with the court on this date.   TIME:
   Failure to appear will be grounds for dismissal for want of prosecution.

4.  **DISCOVERY LIMITATIONS**. The discovery limitations of Rule 190.2, if applicable, or otherwise of Rule 190.3 apply unless changed below:
   (a)  Total hours per side for oral depositions.
   (b)  Number of interrogatories that may be served by each party on any other party.

5.  **ALTERNATIVE DISPUTE RESOLUTION.**
   (a)  By this date the parties must either (1) file an agreement for ADR stating the form of ADR requested and the name of an agreed mediator, if applicable; or (2) set an objection to ADR.  If no agreement or objection is filed, the court may sign an ADR order.
   (b) **03/15/21**  ADR conducted pursuant to the agreement of the parties must be completed by this date.

6.  **DISCOVERY PERIOD ENDS**.   All discovery must be conducted before the end of the discovery period. Parties seeking discovery must serve requests sufficiently far in advance of the end of the discovery period that the deadline for responding will be within the discovery period. Counsel may conduct discovery beyond this deadline by agreement.  Incomplete discovery will not delay the trial.

7.  **DISPOSITIVE MOTIONS AND PLEAS**.  Must be heard by oral hearing or submission.
   (a)  If subject to an interlocutory appeal, dispositive motions or pleas must be heard by this date.
   (b) **01/29/21**  Summary judgment motions not subject to an interlocutory appeal must be heard by this date.
   (c)  Rule 166a(i) motions may not be heard before this date.

8. **01/29/21**  **CHALLENGES TO EXPERT TESTIMONY**.  All motions to exclude expert testimony and evidentiary challenges to expert testimony must be filed by this date, unless extended by leave of court.

9. **02/26/21**  **PLEADINGS**.  All amendments and supplements must be filed by this date.   This order does not preclude prompt filing of pleadings directly responsive to any timely filed pleadings.

10.  Parties shall be prepared to discuss all aspects of trial with the court on this date.
   TIME:                    Failure to appear will be grounds for dismissal for want of prosecution.

11. **03/29/21**  **TRIAL**. If not assigned by the second Friday following this date, the case will be reset.

SIGNED

K BLUM
811 LOUISIANA ST STE 2400
HOUSTON TX 77002-1401

1        24092148

STEVEN KIRKLAND
Judge, 334TH DISTRICT COURT
Date Generated 10/10/2019

JCVO02D
rev.10272014

THE TRIAL DATE LISTED IN ITEM 11 ON THE FRONT OF THIS ORDER IS THE DATE YOUR TWO-WEEK DOCKET BEGINS. YOU WILL BE CONTACTED BY PHONE BY COURT PERSONNEL WITH AN EXACT DATE AND TIME TO APPEAR ONCE THE CASE IS ASSIGNED TO TRIAL.

FOR ADDITIONAL INFORMATION, COURT PROCEDURES AND A COPY OF THE STANDING ORDER IN LIMINE GOVERNING ALL JURY CASES, PLEASE REFER TO OUR WEBSITE AT WWW.JUSTEX.NET

Marilyn Burgess - District Clerk Harris County
Envelope No. 36850677
By: Nelson Cuero
Filed: 9/16/2019 4:35 PM

CAUSE NO.: _____

| | |
|---|---|
| **KENNETH J. and RENA A. KURATKOS,** | **IN THE DISTRICT COURT** |
| Plaintiff, | |
| vs. | |
| **ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY,** | _____JUDICIAL DISTRICT |
| Defendants. | **HARRIS COUNTY, TEXAS** |

## PLAINTIFF'S ORIGINAL PETITION AND DEMAND FOR JURY TRIAL

Plaintiffs, Kenneth J. and Rena A. Kuratkos (collectively, "the Kuratkos"), by counsel, and for its Complaint for Damages against Defendant, Allstate Vehicle and Property Insurance Company, states the following:

### Discovery Control Plan

1. Plaintiffs intend to conduct discovery under Level 3. Texas Rules of Civil Procedure 190.4(a).

2. Plaintiffs seek monetary relief over $100,000 but not more than $200,000, including any penalties, costs, pre-judgement interest, and attorneys' fees. Tex. R. Civ. P. 47(c)(3).

### Conditions Precedent

3. Pursuant to Texas Rule of Civil Procedure 54, Plaintiffs assert that all conditions precedent to recovery have been performed or have occurred.

**The Parties**

4.       Plaintiffs, Kenneth J. and Rena A. Kuratkos ("The Kuratkos") are residents of Texas, with a principal place of residence is in Kingwood, Harris County, Texas.

5.       Upon information and belief, Defendant Allstate Vehicle and Property Insurance Company ("Allstate") is an Illinois corporation with a principal place of business in Northbrook, Illinois. Allstate is authorized to and does conduct business throughout the States of Texas, including in Harris County, Texas. Allstate may be served with process by serving its registered agent, CT Corporation, at 1999 Bryan Street, Suite 900, Dallas, TX 75201-3136.   Pursuant to Texas Rule of Civil Procedure 28, Plaintiffs move the court to order Defendant to substitute its true name if different from the name stated herein.

**Jurisdiction and Venue**

6.       This Court has subject matter jurisdiction over the claims made by the Kuratkos pursuant to Section 541 of the Texas Insurance Code because the Defendant Allstate is licensed to do business in the State of Texas.

7.       This Court has personal jurisdiction over Allstate because it caused contractual and statutory damages and tortious injuries to Plaintiffs in the State of Texas by acts and/or omissions committed in Texas.

8.       Venue is proper in the Harris County, Texas because, among other things, the underlying property damage occurred in Harris County, Texas and the

2

applicable policy of insurance issued by Allstate insured property in Harris County, Texas.

### Factual Allegations

9.      The Kuratkos purchased a policy of homeowners insurance from Allstate which provided various insurance coverages, including, but not limited to, personal property and casualty coverage related to their residential home. In turn, Allstate issued a House and Home Policy Insurance, under Policy No. 836 986 792 (the "Policy"). The Policy was in full force and effect at all relevant times. A true and accurate copy of the Policy is attached hereto as Exhibit A.

10.     At all times material herein, the Kuratkos timely paid all required premiums and had performed all conditions of the Policy.

11.     The Kuratkos sustained significant damage to their residential home and personal property following Hurricane Harvey. The Kuratkos subsequently notified Defendant Allstate of a claim involving significant damage to their residential dwelling, located at 5618 Palisade Falls Trail, Kingwood, Texas, as well as personal property and other insured property and requested coverage and reimbursement of covered losses under the terms of the Policy.

12.     Defendant Allstate denied coverage for the claim by letter dated September 17, 2017.

13.     Following the denial, and without any assistance from Allstate, the Kuratkos, at their own expense, made certain repairs to their home and replaced certain damaged personal property.

14.     The Kuratkos subsequently requested Allstate reconsider its coverage denial under the Policy on July 18, 2019. Allstate did not provide a substantive response to the Kuratkos' request, but instead requested to re-inspect the property and that the Kuratkos submit a Proof of Loss.

15.     As a result of Allstate's wrongful denial, the Kuratkos incurred costs and expenses to repair their home and replace damaged personal property, suffered financial damage and economic harm, and were required to retain an attorney to prosecute its claim for insurance benefits.

## COUNT I – Declaratory Judgment

16.     Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

17.     Plaintiffs, the Kuratkos were an insured of Defendant Allstate at all times relevant to this Complaint pursuant to the provisions of the Policy which constitutes a contract between the parties.

18.     Plaintiffs request that this Court declare the rights and obligations of the parties under the Policy in accordance with the Texas Uniform Declaratory Judgment Act and determine that Defendant owes Plaintiffs coverage for their claim.

## COUNT II - Breach of Contract

19.     Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

20.     Allstate breached its contract, the Policy, with the Kuratkos, in failing

to provide coverage and in failing to reimburse the Kuratkos for their damages.

21.     As a direct and proximate result of the acts alleged in this Count of the Complaint, Plaintiffs the Kuratkos were damaged and injured as is hereinafter described.

### COUNT III - Breach of Implied Covenant
### Of Good Faith and Fair Dealing

22.     Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

23.     Allstate breached the implied covenant of good faith and fair dealing which is implicit in its agreement with the Kuratkos by failing to investigate the claim and denying, without a basis, coverage and for the claim made by the Kuratkos.

24.     As a direct and proximate result of the acts alleged in this count of the Complaint, the Kuratkos were damaged and injured as herein after described.

### COUNT IV – Violations of Texas Insurance Code

25.     Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

26.     Defendant Allstate violated Texas insurance regulations, standards and laws and Texas Insurance Code §541.060, including but not limited to:

a.      Failing to attempt to effectuate a prompt, fair, and equitable settlement of a claim with respect to which liability has become reasonably clear, in violation of Texas Insurance Code Section 541.060 (a)(2)(A);

b.      Failing to promptly provide a reasonable explanation, in relation to the facts or applicable law, for the denial of a claim, in violation of Texas Insurance Code Section 541.060 (a)(3); and

    c.    Refusing to pay a claim without conducting a reasonable investigation with respect to the claim, in violation of Texas Insurance Code Section 541.060(a)(7).

27.    As a direct and proximate result of the acts alleged in this Count, Plaintiffs the Kuratkos were damaged and injured as is hereinafter described.

### DAMAGES

28.    Plaintiffs incorporate by reference all preceding paragraphs and allegations of this Complaint as though fully set forth herein.

29.    As a direct and proximate result of the acts of the Defendant Allstate has alleged in each Count of this Complaint, Plaintiffs the Kuratkos were damaged and injured, including, cost and expense associated with repairing damage to their home and personal property. The Kuratkos have also incurred attorneys' fees associated with Allstate's wrongful denial of their claim, as well as other costs and expenses.

30.    The Kuratkos are further entitled to statutory interest penalties along with reasonable attorneys' fees for violation of Texas Insurance Code Subchapter B pursuant to Texas Insurance Code Section 542.060.

WHEREFORE, Plaintiffs Kenneth J. and Rena A. Kuratkos seek a declaration in its favor that Defendant Allstate Vehicle and Property Insurance Company is required to provide coverage for the referenced claim, for judgment in their favor, for compensatory damages, together with costs and pre- and post-judgment interest and attorney fees to the extent permitted by law, and for such other relief and damages as a Court and/or jury shall find are just and proper.

## JURY TRIAL REQUEST

Plaintiffs, by counsel, request that this case be tried by jury.

## REQUEST FOR DISCLOSURE

Pursuant to Rule 194 of the Texas Rules of Civil Procedure, Defendant is requested to disclose within 50 days of service of this request, all information and material escribed in Rule 194.2(a) – (l).  Texas Rules of Civil Procedure 194.2.

Respectfully submitted,

**Scopelitis, Garvin, Light, Hanson & Feary, P.C.**

By: /s/ James D. Ellman
    James D. Ellman
    State Bar No. 24106749
    jellman@scopelitis.com
    John W. Greene
    State Bar No. 08391520
    jgreene@scopelitis.com

777 Main Street, Suite 3450
Fort Worth, TX 76102
Tel: (817) 869-1700
Fax: (817) 878-9472

Attorneys for Plaintiffs,
Kenneth J. and Rena A. Kuratkos

And

LORANCE THOMPSON

By: /s/  Eric R. Benton
    Eric R. Benton
    State Bar No. 00797890

2900 N. Loop West, Fifth Floor
Houston, Texas 77092
Tel: (713) 868-5560
Fax: (713) 864-4671

4835-2514-5254, v. 1

9/16/2019 4:36:00 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 36850677
By: CUERO, NELSON
Filed: 9/16/2019 4:36:00 PM

# EXHIBIT A

Unofficial Copy Office of Marilyn Burgess District Clerk



Claim# _____0472513001_____

To Whom It May Concern:

I, _____Olivia Leach_____, employee of Allstate Insurance Company Irving, Texas,

do certify that the enclosed is a copy of policy and or declaration page for the above

claim number, showing the coverages that were on the policy at the time of loss

of _08/29/2017_____. The enclosed copy of policy and or declaration

page was printed and mailed through Allstate's Output Processing Center.

_____
Claim Support

State of Texas, County of Dallas

On this _____31st_____ day of _____July_____ 2019, before me personally

appeared _Olivia Leach_ to me known to be the person who executed the

foregoing instrument and acknowledged that he/she executed the same as a free act

and deed.

PATRICIA TORRES
Notary Public, State of Texas
Comm. Expires 10-31-2021
Notary ID 129811687

_____
Notary Public

Confidential Information

Unofficial Copy Office of Marilyn Burgess District Clerk



*Larry W Richardson*
*1800 Preston Pk #122*
*Plano TX 75093*

Information as of July 13, 2017
Policyholder(s)                           Page **1** of 2
**Kenneth J and Rena A Kuratko**
Policy number
**836 986 792**

Your Allstate agency is
**Larry W Richardson**
(972) 964-9077
LRichardson@allstate.com

KENNETH J AND RENA A
KURATKO
5618 PALISADE FALLS TRL
KINGWOOD TX 77345-1906

# We're Confirming Your Policy Change

Thank you for the opportunity to help take care of your insurance needs. I want to let you know that I've made the change(s) you requested to your policy.

Please look over all the information in this mailing. Inside you'll also find a guide to what's in this package and answers to some common questions.

## What has changed?

The enclosed Amended Declarations Page provides a detailed list of the coverages, coverage limits and coverage costs for your House & Home policy.  It also shows the following changes to your policy:

A discount has been changed on your policy.

The change took effect on 07/14/2017.

Your premium for the current policy period has been decreased by a total of $413.97.

## How to contact us

Give me a call at (972) 964-9077 if you have any questions. It's my job to make sure you're in good hands.

Sincerely,

Larry W Richardson
Your Allstate Agent

EP113-1



Policy number: **836 986 792**    Page **2** of 2
Policy effective date: June 3, 2017

# Your Insurance Coverage Checklist

We're happy to have you as an Allstate customer! This checklist outlines what's in this package and provides answers to some basic questions, as well as any "next steps" you may need to take.

☐ **What's in this package?**
See the guide below for the documents that are included. *Next steps:* review your *Policy Declarations* to confirm you have the coverages, coverage limits, premiums and savings that you requested and expected. Read any *Endorsements* or *Important Notices* to learn about new policy changes, topics of special interest, as well as required communications. Keep all of these documents with your other important insurance papers.

☐ **Am I getting all the discounts I should?**
Confirm with your Allstate Agent that you're benefiting from all the discounts you're eligible to receive.

☐ **What about my bill?**
Unless you've already paid your premium in full, we'll send your bill separately. *Next steps:* please pay the minimum amount by the due date listed on it.

You can also pay your bill online at allstate.com or by calling 1-800-ALLSTATE (1-800-255-7828). Para español, llamar al 1-800-979-4285. If you're enrolled in the Allstate® Easy Pay Plan, we'll send you a statement detailing your payment withdrawal schedule.

☐ **What if I have questions?**
You can either contact your Allstate Agent or call us 24/7 at 1-800-ALLSTATE (1-800-255-7828) – para español, llamar al 1-800-979-4285 – with questions about your coverage, or to update your coverages, limits, or deductibles. Or visit us online at allstate.com.

# A guide to your amended package



**Policy Declarations\***
The Policy Declarations lists policy details, such as your property details and coverages.



**Important Notices**
We use these notices to call attention to particularly important coverages, policy changes and discounts.



**Insurance Made Simple**
Insurance seem complicated? Our online guides explain coverage terms and features:
www.allstate.com/
madesimple
Espanol.allstate.com
/facildeentender

**\* To make it easier to see where you may have gaps in your protection, we've highlighted any coverages you do not have in the Coverage Detail section in the enclosed Policy Declarations.**

# Amended House & Home Policy Declarations

Your policy effective date is June 3, 2017


**Allstate**
You're in good hands.

Page **1** of 3

## Total Premium for the Policy Period

| | |
|---|---|
| Premium for property insured | $3,334.20 |
| Recoupment Fee Volunteer Rural Fire Department Assistance Program | 1.26 |
| **Total** | **$3,335.46** |

## Discounts (included in your total premium)

| | | | |
|---|---|---|---|
| Protective Device | $24.76 | Multiple Policy | $414.31 |
| Claim Free | $247.11 | Home Buyer | $41.05 |
| Allstate Easy Pay Plan | $89.85 | Early Signing | $17.28 |
| Loyalty | $89.85 | Responsible Payment | $403.29 |
| Smoke-Free | $90.37 | Welcome | $89.85 |
| **Total discount savings** | | | **$1,507.72** |

## Insured property details*

Please review and verify the information regarding your insured property. Please refer to the Important Notice (X73182) for additional coverage information. Contact us if you have any changes.

**Location of property insured:** 5618 Palisade Falls Trl, Kingwood, TX 77345-1906

**Dwelling Style:**
Built in 1991; 1 family; 4670 sq. ft.; 2 stories

**Attached structures:**
One 3-car attached garage        Open porch, 321 sq. ft.

**Interior details:**
One custom kitchen        Two semi-custom half baths
Two custom full baths      Two gas fireplaces
One semi-custom full bath

**Exterior wall types:**
40% wood siding        60% brick on frame

**Interior wall partition:**
100% drywall

**Heating and cooling:**
Average cost heat & central air conditioning, 100%

**Additional details:**
Interior wall height - less than 10 ft, 100%

Information as of July 13, 2017

## Summary

Named Insured(s)
**Kenneth J and Rena A Kuratko**
Mailing address
**5618 Palisade Falls Trl**
**Kingwood TX 77345-1906**
Policy number
**836 986 792**
Your policy provided by
**Allstate Vehicle and Property Insurance Company**
Policy period
Beginning **June 3, 2017** through **June 3, 2018** at 12:01 a.m. standard time
Your Allstate agency is
**Larry W Richardson**
1800 Preston Pk #122
Plano TX 75093
(972) 964-9077
LRichardson@allstate.com

**Some or all of the information on your Policy Declarations is used in the rating of your policy or it could affect your eligibility for certain coverages. Please notify us immediately if you believe that any information on your Policy Declarations is incorrect. We will make corrections once you have notified us, and any resulting rate adjustments, will be made only for the current policy period or for future policy periods. Please also notify us immediately if you believe any coverages are not listed or are inaccurately listed.**

*(continued)*

Unofficial Copy Office of Marilyn Burgess District Clerk

TX070AMD



Amended House & Home Policy Declarations                                    Page **2** of 3

Policy number:                    836 986 792
Policy effective date:            June 3, 2017

**Insured property details* (continued)**

**Fire protection details:**
2 miles to fire department

**Roof surface material type:**
Composition
• 100% architectural shingles

**Roof details:**
Predominant roof type: Composition        Age of roof - 6 years
Roof geometry - Hip

**Mortgagee**
PENNYMAC LOAN SERVICES LLC ITS SCRS &/OR ASSIGNS/ATIMA
P O Box 6618, Springfield, OH 45501-6618
Loan number: 8007036111

**Additional Interested Party - None**

*This is a partial list of property details. If the interior of your property includes custom
construction, finishes, buildup, specialties or systems, please contact your Allstate
representative for a complete description of additional property details.*

## Coverage detail for the property insured

| Coverage | Limits of Liability | Applicable Deductible(s) |
|---|---|---|
| Dwelling Protection | $677,368 | • $13,547 Tropical Cyclone<br>• $13,547 Windstorm and Hail<br>• $13,547 All other perils |
| Other Structures Protection | $135,474 | • $13,547 Tropical Cyclone<br>• $13,547 Windstorm and Hail<br>• $13,547 All other perils |
| Personal Property Protection | $474,158 | • $13,547 Tropical Cyclone<br>• $13,547 Windstorm and Hail<br>• $13,547 All other perils |
| Additional Living Expense | Up to 24 months not to exceed $135,474 | |
| Family Liability Protection | $300,000 each occurrence | |
| Guest Medical Protection | $5,000 each person | |
| Foundation Water Damage | $5,000 | |
| Building Codes | **Not purchased*** | |
| Building Structure Reimbursement Extended Limits | **Not purchased*** | |
| Roof Surfaces Extended Coverage | Included | |
| Water Back-Up | **Not purchased*** | |
| Residence Glass | **Not purchased*** | |

Unofficial Copy Office of Marilyn Burgess District Clerk

TX070AMD

064 070 070
17071AT005170
110000011005170064TX0001701170714025937001441002003010435

Amended House & Home Policy Declarations
Policy number: **836 986 792**
Policy effective date:   June 3, 2017

Page **3** of 3



---

▶ *Other Coverages Not Purchased:*

- Additional Fire Department Charges*
- Building Materials Theft*
- Country Endorsement*
- Dwelling in the Course of Construction*
- Electronic Data Recovery*
- Extended Coverage on Cameras*
- Extended Coverage on Jewelry, Watches and Furs*

- Extended Coverage on Musical Instruments*
- Extended Coverage on Sports Equipment*
- Fair Rental Income*
- Golf Cart*
- Green Improvement*
- Home Day Care*

- Identity Theft Expenses*
- Increased Coverage on Business Property*
- Increased Coverage on Theft of Silverware*
- Loss Assessments*
- Residence Glass*
- Secondary Residence*
- Yard and Garden*

---

*\* This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Scheduled Personal Property Coverage

*Your policy does not include Scheduled Personal Property Coverage. This coverage can provide you with valuable protection. To help you stay current with your insurance needs, contact your agent to discuss available coverage options and other products and services that can help protect you.*

## Your policy documents

Your House & Home policy consists of the Policy Declarations, any Policy Declarations Addendum, and the following documents. Please keep them together.

- AVPIC House & Home Policy  – AVP91
- Windstorm and Hail Deductible Endorsement – AVP82
- Roof Surfaces Extended Coverage Endorsement – AVP144-1

- Tropical Cyclone Deductible Endorsement – APC548-1
- Texas Amendatory Endorsement – AVP348
- Texas Amendatory Endorsement – AVP345

## Important payment and coverage information

Here is some additional, helpful information related to your coverage and paying your bill:

▶ The Property Insurance Adjustment condition applies using the Marshall & Swift/Boeckh building cost index.

▶ Please note: This is not a request for payment. Any adjustments to your premium will be reflected on your next scheduled bill which will be mailed separately.

In the meantime, if you have any outstanding or unpaid bills, please pay at least the minimum amount due to assure your policy continues in force. If you have any questions, please contact your agent.

---

**Allstate Vehicle and Property Insurance Company's** Secretary and President have signed this policy with legal authority at Northbrook, Illinois.

Steven P. Sorenson
President

Susan L. Lees
Secretary

TX070AMD



# Important notices

Policy number: 836 986 792
Policy effective date: June 3, 2017

## Your Estimated Home Replacement Cost

Allstate has determined that the estimated cost to replace your home is: $677,368.

We based your estimated cost on information provided by you and selected data that was available to us, which is described in the "Insured property details" section of your Declarations Page. Please review all the information in this section to ensure the accuracy of the information used to determine the estimated replacement cost of your home.

The enclosed Declarations Page shows the limit of liability applicable to Dwelling Protection–Coverage A of your homeowners insurance policy. The estimated replacement cost of your home is the minimum amount for which we will insure your home.

The decision regarding the limit applicable to your Dwelling Protection–Coverage A is your decision to make, as long as, at a minimum, your limit equals the estimated replacement cost as determined by Allstate and does not exceed maximum coverage limitations established by Allstate.

It is important to keep in mind that your Coverage A limits reflect a replacement cost that is only an estimate based on data that was available to us when we made this estimate (this information is described in the "Insured property details" section of your Declarations Page). The actual amount it will cost to replace your home cannot be known until after a covered total loss has occurred. Please keep in mind that we do not guarantee the adequacy of the estimate to cover any future loss(es).

### How Is the Replacement Cost Estimated?

Many factors can affect the cost to replace your home, including its age, size, and type of construction. For example, the replacement cost uses construction data, such as labor and materials, that are available to us when we made this estimate. This estimate is also based on characteristics of the home, which include information that you provided to us. You might have chosen to insure your home for a higher amount than the estimated replacement cost shown above.

### Note to Customers Renewing Their Policy

The estimated replacement cost for your home may have changed since the last time we communicated this information to you. This is because, at renewal, Allstate uses the home characteristics that you have provided to us to recalculate and update the estimated replacement cost. Using updated labor and material rates for your zip code, Allstate takes the home characteristics you have provided and determines the updated estimated replacement cost. The information about your

home's characteristics is provided in the "Insured property details" section of your Declarations Page.

If the information about your home shown in your Declarations Page requires any change or if you have any questions or concerns about the information contained in this Important Notice, please contact your Allstate representative, or call us at 1-800-ALLSTATE.

X73182

Policy endorsement

## Tropical Cyclone Deductible Endorsement  – APC548-1

It is agreed that **your** policy is amended as follows:

I.  Under **Definitions Used In This Policy**, the following definitions are added:

**Hurricane**—means a weather system declared by the **National Weather Service** to be a hurricane.

**National Weather Service**—means the National Weather Service or, if the National Weather Service ceases to exist, ceases to perform the function of declaring weather systems to be  hurricanes or tropical storms, or ceases to perform the function of issuing  hurricane watches or hurricane warnings, such other entity as determined by  **us**.

**Tropical cyclone**—means a **hurricane**, a **tropical storm**, or any wind, hail, rain, snow, or sleet accompanying a **hurricane** or a **tropical storm**.

**Tropical storm**—means a weather system declared by the **National Weather Service** to be a tropical storm, provided such weather system:

a)  was a **hurricane** or, at any time in the 24 hours immediately following **your** covered loss, becomes a **hurricane**; and

b)  was the subject of a hurricane watch or hurricane warning issued by the **National Weather Service** for any part of the state in which **your residence premises** is located.

II.  Under **Section I Conditions**, Condition 1, **Deductible**, the following is added:

Tropical Cyclone Deductible
The tropical cyclone deductible applies in the event of covered loss caused by **tropical cyclone** or by any object(s) driven by **tropical cyclone**.

The tropical cyclone deductible amount will appear on **your** Policy Declarations. **We** will pay only when a covered loss to which this deductible applies exceeds the tropical cyclone deductible amount. **We** will then pay only the excess amount.

If another deductible applicable to the loss exceeds the tropical cyclone deductible, the greater deductible will be applied to the loss.


All other provisions of the policy apply.


Unofficial Copy Office of Marilyn Burgess District Clerk

**Policy Endorsement**



*The following endorsement changes your policy.*
*Please read this document carefully and keep it with*
*your policy.*

## Windstorm and Hail Deductible Endorsement – AVP82 (2016)



**Section I Conditions**, Conditions 1, **"Deductible,"** the
following is added:

> **Windstorm** And Hail Deductible
> The windstorm and hail deductible applies in the event of
> covered loss caused by **windstorm** or hail.

> The **windstorm** and hail deductible amount will appear on
> **your** Policy Declarations. **We** will pay only when a covered
> loss to which this deductible applies exceeds the
> **windstorm** and hail deductible amount. **We** will then pay
> only the excess amount.

> If another deductible applicable to the loss exceeds the
> **windstorm** and hail deductible, the greater deductible will
> be applied to the loss.

All other provisions of **your** policy apply.



**ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY**

# House & Home Policy

**TEXAS**                                                                 AVP91

Policy number                                    Policy Effective

Policy Holders

Unofficial Copy Office of Marilyn Burgess District Clerk

**Allstate Vehicle and Property Insurance Company**
**The Company Named in the Policy Declarations**
A Stock Company---Home Office: Northbrook, Illinois 60062



House & Home Policy                                                        Page **2** of 28
Policy number

# Table of Contents

Agreements We Make With You ...................................4

**General** ....................................................................4
Definitions Used In This Policy ..................................4
Insuring Agreement ..................................................5
Conformity To State Statutes ...................................5
Coverage Changes ....................................................5
Policy Transfer ..........................................................6
Continued Coverage After Your Death ......................6
Dividend Provision ....................................................6
Cancellation ..............................................................6
Refusal To Renew ......................................................6
Charge For Insufficient Funds ...................................7
Misrepresentation, Fraud Or Concealment ................7
What Law Will Apply .................................................7
Where Lawsuits May Be Brought ...............................7
Action Against Us .....................................................7
Arbitration ................................................................8
Residential Community Property Clause ....................8
Loss Reduction And Other Items ...............................8

**Section I—Your Property** ......................................8

**Dwelling Protection-Coverage A** .........................8
Property We Cover Under Coverage A ........................8
Property We Do Not Cover Under Coverage A ............8

**Other Structures Protection-Coverage B** ...........8
Property We Cover Under Coverage B ........................8
Property We Do Not Cover Under Coverage B ............8

**Personal Property Protection-Coverage C** ...........9
Property We Cover Under Coverage C ........................9
Limitations On Certain Personal Property ..................9
Property We Do Not Cover Under Coverage C ............9

Losses We Cover Under Coverages A, B and C ...........10
Losses We Do Not Cover Under Coverages A, B and C ....11

**Section I Additional Protection** ...........................14
Additional Living Expense .........................................14
Civil, Governmental And Military Authorities .............14
Debris Removal .........................................................14
Emergency Removal Of Property ...............................14
Fire Department Charges ..........................................14
Temporary Repairs After A Loss ................................15
Trees, Shrubs, Plants And Lawns ..............................15
Power Interruption ....................................................15
Arson Reward ............................................................15
Collapse ....................................................................15

Lock Replacement ....................................................16
Foundation Water Damage ........................................16

**Section I Conditions** ............................................16
Deductible .................................................................16
Insurable Interest And Our Liability ...........................16
What You Must Do After A Loss ..................................16
Our Duties After Loss ................................................17
Our Settlement Options .............................................17
How We Pay For A Loss ..............................................17
Our Settlement Of Loss .............................................19
Appraisal ...................................................................19
Abandoned Property ..................................................19
Permission Granted To You .......................................19
Our Rights To Recover Payment .................................19
Our Rights To Obtain Salvage ....................................19
Action Against Us ......................................................20
Loss To A Pair Or Set .................................................20
Glass Replacement ....................................................20
No Benefit To Bailee ..................................................20
Other Insurance ........................................................20
Property Insurance Adjustment .................................20
Mortgagee .................................................................20
Catastrophe Claims ...................................................21
Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes
   Remediation As A Direct Result Of A Covered
   Water Loss ...........................................................21

**Section II—Family Liability And Guest**
         **Medical Protection** ...................................21

**Family Liability Protection-Coverage X** ...............21
Losses We Cover Under Coverage X ............................21
Losses We Do Not Cover Under Coverage X .................21

**Guest Medical Protection-Coverage Y** .................23
Losses We Cover Under Coverage Y ............................23
Losses We Do Not Cover Under Coverage Y .................23

**Section II Additional Protection** ..........................25
Claim Expenses .........................................................25
Emergency First Aid ..................................................25
Damage To Property Of Others ..................................25

**Section II Conditions** ...........................................25
What You Must Do After A Loss ..................................25
What An Injured Person Must Do—Guest Medical
   Protection-Coverage Y ..........................................26
Our Payment Of Loss—Guest Medical Protection-
   Coverage Y ............................................................26

House & Home Policy
Policy number:



Our Limits Of Liability ................................................26
Bankruptcy.................................................................26
Our Rights To Recover Payment—Family Liability
   Protection–Coverage X ........................................26
Action Against Us .......................................................26
Other Insurance—Family Liability Protection–
   Coverage X .........................................................26
Notice Of Settlement Of Liability Claim ....................26

**Section III—Optional Protection** .........................27

**Optional Coverages**...............................................27
Building Codes–Coverage BC.....................................27
Increased Coverage On Business Property–Coverage BP .....27
Fire Department Charges–Coverage F........................27
Loss Assessments–Coverage G .................................27
Extended Coverage On Jewelry, Watches And Furs–
   Coverage J............................................................27
Increased Coverage On Theft Of Silverware–
   Coverage ST..........................................................28

Unofficial Copy Office of Marilyn Burgess District Clerk



## Agreements We Make With You

**We** make the following agreements with **you**:

# General

## Definitions Used In This Policy

Throughout this policy, when the following words appear in bold type, they are defined as follows:

1. **Bodily injury**—means physical harm to the body, including sickness or disease, and resulting death, except that **bodily injury** does not include diseases transmitted through sexual contact including:
   a) any venereal disease;
   b) herpes;
   c) Acquired Immune Deficiency Syndrome (AIDS);
   d) AIDS Related Complex (ARC);
   e) Human Immunodeficiency Virus (HIV);

   or any resulting symptom, effect, condition, disease or illness related to a) through e) listed above.

   In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
   a) lead in any form;
   b) asbestos in any form;
   c) radon in any form; or
   d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises**;

   unless such symptom, effect, condition, disease or illness results from:
   a) heat, smoke or fumes from a fire which becomes uncontrollable or escapes from its intended location; or
   b) the **sudden and accidental** discharge, dispersal, release or escape of carbon monoxide from a heating system, an appliance for heating water, or a household appliance located at the **residence premises**.

2. **Building structure**—means a structure with walls and a roof.

3. **Business**—means:
   a) any full- or part-time activity of any kind engaged in for economic gain including the use of any part of any premises for such purposes. The providing of home day care services to other than an **insured**

**person** or relative of an **insured person** for economic gain is also a **business**.

However, the mutual exchange of home day care services is not considered a **business**;

   b) the rental or holding for rental of property by an **insured person**. Rental of **your residence premises** is not considered a **business** when:
   1) it is rented occasionally for residential purposes;
   2) a portion is rented to roomers or boarders, provided not more than two roomers or boarders reside on the **residence premises** at any one time; or
   3) a portion is rented as a private garage.

4. **Business day**—means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

5. **Dwelling**—means the single-family **building structure**, identified as the insured property on the Policy Declarations, where **you** reside and which is principally used as a private residence.

6. **Insured person(s)**—means **you** and, if a resident of **your** household:
   a) any relative; and
   b) any person under the age of 21 in **your** care.

   Under **Family Liability Protection–Coverage X** and **Guest Medical Protection–Coverage Y**, **"insured person"** also means:
   a) any person or organization legally responsible for loss caused by animals or watercraft covered by this policy which are owned by an **insured person**. **We** do not cover any person or organization using or having custody of animals or watercraft in any **business**, or without permission of the owner.
   b) with respect to the use of any vehicle covered by this policy, any person while engaged in the employment of an **insured person**.

7. **Insured premises**—means:
   a) the **residence premises**; and
   b) under **Section II** only:
   1) the part of any other premises, other structures and grounds used by **you** as a residence. This includes premises, structures and grounds **you** acquire for **your** use as a private residence while this policy is in effect;

House & Home Policy
Policy number:



2) any part of a premises not owned by an **insured person** but where an **insured person** is temporarily living;
3) cemetery plots or burial vaults owned by an **insured person**;
4) land owned by or rented to an **insured person** where a single-family **dwelling** is being built as that person's residence;
5) any premises used by an **insured person** in connection with the **residence premises**; and
6) any part of a premises occasionally rented to an **insured person** for other than **business** purposes.

8. **Occurrence**—means an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**.

9. **Property damage**—means physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction.

10. **Residence employee**—means an employee of an **insured person** while performing duties arising out of and in the course of employment in connection with the maintenance or use of **your residence premises**. This includes similar duties performed elsewhere for an **insured person**, not in connection with the **business** of an **insured person**.

11. **Residence premises**—means the **dwelling**, other structures and land located at the address stated on the Policy Declarations.

12. **Roof surface**—means the roof surface material type (slate, composition, wood, tile, metal, all other roof surface material types) of a **building structure** or other structure covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B** and all other roofing components, including, but not limited to:
    a) flashing, caps, vents, drip edges, and ice shields;
    b) sheeting, felt and membranes;
    c) modified bitumen, bitumen, rubber, built-up and sprayed polyurethane foam roofing;
    d) foam inserts and elastomeric coating;
    e) finials, eave and gable trim and snow guards;
    f) battens, counter battens, bird stops, gravel stops; and

g) coatings, adhesives, adherents and other finishing materials for roof surface materials and all other roofing components.

13. **Sudden and accidental**—means damage which occurs abruptly and is unexpected and/or unintended from the standpoint of **you**.

14. **We**, **us**, or **our**—means the company named on the Policy Declarations.

15. **Windstorm**—means wind with or without precipitation.

16. **You** or **your**—means the person listed under Named Insured(s) on the Policy Declarations as the insured and that person's resident spouse.

## Insuring Agreement

In reliance on the information **you** have given **us**, **we** agree to provide the coverages indicated on the Policy Declarations. In return, **you** must pay the premium when due and comply with the policy terms and conditions, and inform **us** of any change in title, use or occupancy of the **residence premises**.

Subject to the terms of this policy, the Policy Declarations shows the location of the **residence premises**, applicable coverages, limits of liability and premiums. The policy applies only to losses or **occurrences** that take place during the policy period. The Policy Period is shown on the Policy Declarations. This policy is not complete without the Policy Declarations.

This policy imposes joint obligations on the Named Insured(s) listed on the Policy Declarations and on that person's resident spouse. These persons are defined as **you** or **your**. This means that the responsibilities, acts and omissions of a person defined as **you** or **your** will be binding upon any other person defined as **you** or **your**.

## Conformity To State Statutes

When the policy provisions conflict with the statutes of the state in which the **residence premises** is located, the provisions are amended to conform to such statutes.

## Coverage Changes

When **we** broaden coverage during the policy period without charge, **you** have the new features if **you** have the coverage to which they apply. Otherwise, the policy can be changed only by endorsement.



The coverage provided and the premium for the policy are based on information **you** have given **us**. **You** agree to cooperate with **us** in determining if this information is correct and complete. **You** agree that if this information changes, or if this information is incorrect or incomplete, **we** may adjust **your** coverage and premium accordingly during the policy period.

Any calculation of **your** premium or changes in **your** coverage will be made using the rules, rates and forms on file, if required, for **our** use in **your** state. The rates in effect at the beginning of **your** current policy period will be used to calculate any change in **your** premium.

## Policy Transfer
**You** may not transfer this policy to another person without **our** written consent.

## Continued Coverage After Your Death
If **you** die, coverage will continue until the end of the current policy period for:

1.   **your** legal representative while acting as such, but only with respect to the **residence premises** and property covered under this policy on the date of **your** death.

2.   an **insured person**, and any person having proper temporary custody of **your** property until a legal representative is appointed and qualified.

## Dividend Provision
To the extent and upon the conditions fixed and determined from time to time by **our** Board of Directors in accordance with the provisions of the Texas Insurance Code of 1951, as amended, **you** shall be entitled to participate in a distribution of **our** surplus.

## Cancellation
1.   **You** may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send **you** any refund due when the policy is returned to **us**.

2.   If this policy has been in effect for less than 60 days and is not a renewal **we** may cancel this policy if:
   a)   **we** identify a condition that:
      1)   creates an increased risk of hazard;
      2)   was not disclosed in the application for insurance coverage; and
      3)   is not the subject of a prior claim; or
   b)   before the effective date of the policy, **we** have not accepted a copy of a required inspection report that:

1)   was completed by an inspector licensed by the Texas Real Estate Commission or who is otherwise authorized to perform inspections; and
2)   is dated not earlier than the 90th day before the effective date of the policy.

An inspection report is deemed accepted, unless **we** reject it before the 11th day after the date the inspection report is received by **us**.

3.   **We** may cancel this policy at any time for the following reasons:
   a)   **you** do not pay the premium or any portion of the premium when due.
   b)   the Department of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state.
   c)   **you** submit a fraudulent claim.
   d)   there is an increase in the hazard covered by this policy that is within **your** control and that would produce an increase in the premium rate of this policy.

4.   The effective date of cancellation cannot be before the 10th day after **we** mail the notice if **we** cancel for any of the reasons in item 3 above or the 30th day after **we** mail the notice if **we** cancel for any other reason. **Our** notice of cancellation must state the reason for cancellation.

5.   If **we** cancel, **our** notice to **you** will state that if the refund is not included with the notice, it will be provided on demand.

6.   **We** may not cancel this policy solely because **you** are an elected official

## Refusal To Renew
1.   **We** may not refuse to renew this policy because of claims for losses resulting from natural causes.

2.   **We** may not refuse to renew this policy solely because **you** are an elected officer.

3.   **We** may refuse to renew this policy if **you** have filed three or more claims under the policy in any three year period that do not result from natural causes.

   If **you** have filed two claims in a period of less than three years, **we** may notify **you** in writing, that if **you** file a third

House & Home Policy
Policy number:



claim during the three year period, **we** may refuse to renew this policy by providing **you** proper notice of **our** refusal to renew as provided in 4 below. If **we** do not notify **you** after the second claim, **we** may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under this policy.

4.   If **we** refuse to renew this policy, **we** must deliver to **you**, or mail to **you** at **your** mailing address shown on the Policy Declarations and any mortgagee named on the Policy Declarations, written notice of **our** refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If **we** fail to give **you** proper notice of **our** decision not to renew, **you** may require **us** to renew the policy.

## Charge For Insufficient Funds
If at any time, **your** payment of any premium amount due is made by check, electronic transaction or other remittance which is not honored because of insufficient funds or closed account, **you** will be charged a fee.

## Misrepresentation, Fraud Or Concealment
**We** may void this policy if it was obtained by misrepresentation, fraud or concealment of material facts. If **we** determine that this policy is void, all premiums paid will be returned to **you** since there has been no coverage under this policy.

**We** do not cover any loss or **occurrence** in which any **insured person** has concealed or misrepresented any material fact or circumstance.

## What Law Will Apply
This policy is issued in accordance with the laws of the state in which the **residence premises** is located and covers property or risks principally located in that state. Subject to the following paragraph, the laws of the state in which the **residence premises** is located shall govern any and all claims or disputes in any way related to this policy.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, claims or disputes regarding that covered loss to property, or other covered **occurrence**, may be governed by the laws of the jurisdiction in which that covered loss to property or other

covered **occurrence** happened, only if the laws of that jurisdiction would apply in the absence of a contractual choice of law provision such as this.

## Where Lawsuits May Be Brought
Subject to the following two paragraphs, any and all lawsuits in any way related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located. Any and all lawsuits against persons not parties to this policy but involved in the sale, administration, performance, or alleged breach of this policy, or otherwise related to this policy, shall be brought, heard and decided only in a state or federal court located in the state in which the **residence premises** is located, provided that such persons are subject to or consent to suit in the courts specified in this paragraph.

If a covered loss to property, or any other **occurrence** for which coverage applies under this policy, happens outside the state in which the **residence premises** is located, lawsuits regarding that covered loss to property, or other covered **occurrence**, may also be brought in the judicial district where that covered loss to property or other covered **occurrence** happened.

Nothing in this provision, **Where Lawsuits May Be Brought**, shall impair any party's right to remove a state court lawsuit to a federal court.

## Action Against Us
No one may bring an action against **us** unless there has been full compliance with all policy terms.

Any action against **us** to which neither the **Action Against Us** provision located in **Section I Conditions** nor the **Action Against Us** provision located in **Section II Conditions** applies must be commenced within two years and one day of the date the cause of action first accrues.

If an action is brought asserting claims relating to the existence or amount of coverage, or the amount of loss for which coverage is sought, under different coverages of this policy, the claims relating to each coverage shall be treated as if they were separate actions for the purpose of the time limit to commence action.

## Arbitration
After a loss or occurrence, any coverage claim or dispute in any way related to this policy, by an **insured person** against **us** or **us** against an **insured person**, may be resolved by





House & Home Policy
Policy number:



3. Land.

4. Construction materials and supplies at the **residence premises** for use in connection with the **dwelling**.

5. Satellite dish antennas and their systems, whether or not attached to **building structures**.

## Personal Property Protection–Coverage C

### Property We Cover Under Coverage C:

1. Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection– Coverage C**.

2. At **your** option, personal property owned by a guest or **residence employee** while the property is in a residence **you** are occupying.

### Limitations On Certain Personal Property:

Limitations apply to the following groups of personal property. If personal property can reasonably be considered a part of two or more of the groups listed below, the lowest limit will apply. These limitations do not increase the amount of insurance under **Personal Property Protection–Coverage C**. The total amount of coverage for each group in any one loss is as follows:

1. $   200  — Property used or intended for use in a **business** while the property is away from the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

2. $   500  — Theft of any recording or storage media while such property is away from the **residence premises**, whether or not it is used with electronic data processing equipment or in a **business**. Recording or storage media includes, but is not limited to:
   a) tapes;
   b) CDs, DVDs and other discs;
   c) records;
   d) disks;
   e) reels;
   f) cassettes;
   g) cartridges; or
   h) programs.

3. $ 1,000  — Property used or intended for use in a **business**, including property held as samples or for sale or delivery after sale, while the property is on the **residence premises**. This does not include electronic data processing equipment or the recording or storage media used with that equipment.

4. $ 1,000  — Trading cards, subject to a maximum amount of $250 per card.

5. $ 1,000  — Watercraft, including their attached or unattached trailers, furnishings, equipment, parts, and motors.

6. $ 1,000  — Trailers not used with watercraft.

7. $ 1,500  — Motorized land vehicle parts, equipment or accessories not attached to or located in or upon any motorized land vehicle.

8. $ 2,000  — Theft of firearms, their related equipment, and accessories.

9. $ 2,500  — Theft of goldware, silverware, pewterware and platinumware.

10. $ 5,000  — Theft of jewelry, watches, precious and semi-precious stones, gold other than goldware, silver other than silverware, pewter other than pewterware, platinum other than platinumware, and furs, including any item containing fur which represents its principal value, subject to a maximum amount of $1,000 per item.

11. $10,000  — Theft of tools and their accessories.

12. $10,000  — Motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

### Property We Do Not Cover Under Coverage C:

1. Personal property specifically described and insured by this or any other insurance.

2. Animals.



3. Motorized land vehicles, including, but not limited to, any land vehicle powered or assisted by a motor or engine. **We** do not cover any motorized land vehicle parts, equipment or accessories attached to or located in or upon any motorized land vehicle. **We** do cover motorized land vehicles designed for assisting the disabled, or used solely for the service of the **insured premises**, and not licensed for use on public roads.

4. Aircraft and aircraft parts. This does not include model or hobby craft not designed to carry people or cargo.

5. Property of roomers, boarders or tenants not related to **you**.

6. Property located away from the **residence premises** and rented or held for rental to others.

7. Satellite dish antennas and their systems.

8. Money, bullion, bank notes, coins and other numismatic property, scrip, stored value cards, and smart cards.

9. Accounts, bills, deeds, evidences of debt, letters of credit, notes other than bank notes, checks, cashier's checks, traveler's checks, passports, securities, tickets, and stamps, including philatelic property.

10. Manuscripts, including documents stored on electronic media.

## Losses We Cover Under Coverages A, B and C:

**We** will cover **sudden and accidental** direct physical loss to the property described in **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** caused by the following, except as limited or excluded in this policy:

1. Fire or lightning.

2. **Windstorm** or hail.

 **We** do not cover:
 a) loss to covered property inside a **building structure**, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall;
 b) loss to watercraft and their trailers, furnishings, equipment and motors unless inside a fully enclosed **building structure**. However, **we** do cover canoes and rowboats on the **residence premises**.

3. Explosion.

4. Riot or civil commotion, including pillage and looting during, and at the site of, the riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles.

7. Smoke.

8. Vandalism and malicious mischief.

 **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.

9. Falling objects.

 **We** do not cover loss to personal property inside a **building structure** unless the falling object first damages the exterior walls or roof of the **building structure**.

10. Weight of ice, snow or sleet which causes damage to:
 a) a **building structure** or other structure covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**; or
 b) property covered under **Personal Property Protection–Coverage C** in a **building structure**, but only if the **building structure** is damaged due to the weight of ice, snow or sleet.

11. Artificially generated electrical current to electronics, electrical appliances, fixtures and wiring.

12. Bulging, burning, cracking or rupture of a steam or hot water heating system, an air conditioning system, an automatic fire protective sprinkler system or an appliance for heating water.

13. Water or steam that escapes from a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system, or from a household appliance due to accidental discharge or overflow. However, **we** do not cover loss, including ensuing loss or the cost of tearing out and replacing any part of **your dwelling**, caused by the discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance or fire protective sprinkler system

House & Home Policy
Policy number:



where the source of the discharge or overflow is either below the surface of the ground or within or below the slab or foundation of the **dwelling** except as specifically provided in **Section I**, **Additional Protection**, under item 12, **Foundation Water Damage**.

**We** do not cover loss to the system or appliance from which the water or steam escapes, or loss from water which backs up through sewers or drains or overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

14. Freezing of a plumbing, heating or air conditioning system, an automatic fire protective sprinkler system or a household appliance.

**We** do not cover loss at the **residence premises** under items 12, 13, and 14, immediately above, which is caused by freezing while the **building structure** is vacant, unoccupied or under construction, or when freezing results from a lack of utility services at the **residence premises** to which item A.10 in **Losses We Do Not Cover Under Coverages A, B and C** applies, unless **you** have used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

15. Theft, or attempted theft, including disappearance of property from a known place when it is likely that a theft has occurred. Any theft must be promptly reported to the police.

**We** do not cover:
a)   theft or attempted theft committed by an **insured person**;
b)   theft in or from the **residence premises** while under construction or of materials and supplies for use in construction, until the **dwelling** is completed and occupied;
c)   theft of any property while at any other residence owned, rented to or occupied by an **insured person** unless the **insured person** is temporarily residing there;
d)   theft of trailers, campers, watercraft, including furnishings, equipment and outboard motors, away from the **residence premises**; or

e)   theft from that part of the **residence premises** rented by **you** to other than an **insured person**.

16. Breakage of glass, meaning damage to covered personal property caused by breakage of glass constituting a part of any **building structure** on the **residence premises**. This does not include damage to the glass.

**Losses We Do Not Cover Under Coverages A, B and C:**

A.   Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss which consists of, is caused by, or would not have occurred but for, one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of: a) the cause or source of the excluded event, peril or condition; b) any other causes contributing concurrently or in any sequence with the excluded event, peril or condition to produce the loss; or c) whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

1.   Flood, including, but not limited to, surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind.

2.   Water or any other substance that backs up through sewers or drains.

3.   Water or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure.

4.   Water or any other substance on or below the surface of the ground. This includes water or any other substance which exerts pressure on, or flows, seeps or leaks through any part of the **residence premises**.

**We** do cover **sudden and accidental** direct physical loss caused by fire or explosion resulting from items 1 through 4 listed above.

5.   Earth movement of any type, including, but not limited to, earthquake, volcanic eruption, lava flow, landslide, subsidence, mudflow, pressure, sinkhole,



erosion, or the sinking, rising, shifting, creeping, expanding, bulging, cracking, settling or contracting of the earth. This exclusion applies whether or not the earth movement is combined with water.

**We** do cover **sudden and accidental** direct physical loss caused by fire or explosion resulting from earth movement.

6. Actions taken by civil, governmental or military authorities:
   a) to enforce any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of any **building structure**, other structure or land at the **residence premises**; or
   b) requesting, demanding or ordering that an **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of, any loss or potential loss at the **residence premises**.

   However, **we** will cover **sudden and accidental** direct physical loss caused by actions of civil, governmental or military authority to prevent the spread of fire.

7. Nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. Loss which consists of, is caused by, or would not have occurred but for, the nuclear hazard is not considered loss by fire, explosion or smoke.

8. a) War, whether declared or undeclared;
   b) warlike acts;
   c) invasion;
   d) insurrection;
   e) rebellion;
   f) revolution;
   g) civil war;
   h) usurped power;
   i) destruction for a military purpose; or
   j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

9. Vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic

solids, waste materials, or other irritants, contaminants or pollutants.

However, **we** will not apply this exclusion to **sudden and accidental** direct physical loss which consists of, is caused by, or would not have occurred but for:
   a) a fire or an explosion at **your residence premises**;
   b) smoke or soot resulting from food preparation at **your residence premises**;
   c) the malfunction of a heating or air conditioning system or a household appliance at **your residence premises**;
   d) smoke, soot or fumes originating away from **your residence premises**, provided the smoke, soot or fumes:
      1) were not from industrial, governmental or military operations, agricultural smudging, or the manufacturing of any controlled substance; and
      2) did not result from nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these;
   e) spray, overspray, spatter, or spillage, by a person located on the ground at the **residence premises** or in or upon a structure **we** cover at the **residence premises**, of lawfully possessed, commercially available supplies manufactured or produced for use in food preparation, personal hygiene, or for cleaning or maintaining a residential property or personal property;
   f) spillage or release at **your residence premises** of gas or oil, in any form, used to prepare foods at **your residence premises**, or to heat the **dwelling** or other **building structures** at **your residence premises**, when such spillage or release results in a fire or an explosion at **your residence premises**; or
   g) fuel, oil or other fluids necessary to operate a motorized land vehicle if, at the time of the loss, such fuel, oil or other fluids are being used solely for the purpose of operating a motorized land vehicle and the loss results from a collision, at the **residence premises**, of the motorized land vehicle with property **we** cover under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

10. Lack of utility services at the **residence premises**, meaning loss or interruption of, lack or loss of access

House & Home Policy
Policy number:



to, or unavailability of, one or more utility services for the **residence premises**, including, but not limited to, electric, natural gas or other fuels, water, sanitation, sewer, cable or communication services, unless the lack of utility services results solely from a **sudden and accidental** direct physical loss to property located at the **residence premises** caused by an event, peril or condition not excluded by this policy.

When the lack of utility services results in freezing of:
a)  plumbing, automatic fire protective sprinkler system, heating or air conditioning systems; or
b)  household appliances;

or when the lack of utility services results in discharge, leakage or overflow from within a) or b) above caused by freezing, **we** do cover **sudden and accidental** direct physical loss caused by the freezing if **you** used reasonable care to maintain heat in the **building structure**. If the **building structure** is not equipped with an automatic fire protective sprinkler system, **you** may elect to shut off the water supply and drain the water from the systems and appliances instead of maintaining heat in the **building structure**.

11.  Inability of an **insured person** to use, access or retain personal property **we** cover under **Personal Property Protection–Coverage C** due to an actual, impending or expected lack, impassability or unavailability of any reasonable means of ingress to or egress from the **residence premises** or any other location where the property is located, including, but not limited to, roads, highways, causeways, sidewalks, paths, rails, bridges, tunnels or waterways.

For purposes of this exclusion, a particular means of ingress or egress will be considered impassable or unavailable if:
a)  it cannot be safely traveled due to physical damage or destruction of that means of ingress or egress; or
b)  it cannot be traveled due to actions by others, including, but not limited to, civil, governmental or military authorities which prohibit or restrict travel using that means of ingress or egress.

12.  Weather Conditions that contribute in any way with an event, peril or condition excluded under **Losses**

**We Do Not Cover Under Coverages A, B and C** to produce a loss.

B.  Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by mold, fungus, wet rot, dry rot or other microbes. This includes any loss which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

This exclusion applies regardless of whether mold, fungus, wet rot, dry rot or other microbes arises from any other cause of loss, including, but not limited to, a loss involving water, water damage or discharge, which may otherwise be covered by this policy, except as specifically provided in **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

When loss is not excluded under paragraph A or paragraph B of **Losses We Do Not Cover Under Coverages A, B and C**, and there are two or more causes of loss to the covered property, **we** do not cover the loss if the predominant cause(s) of loss is (are) excluded under paragraph D, immediately below.

D.  Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** of this policy, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.
1.  The failure by any **insured person** to take all reasonable steps to save and preserve property when the property is endangered by a cause of loss **we** cover.

2.  Intentional or criminal acts of or at the direction of any **insured person**, if the loss that occurs:
a)  may be reasonably expected to result from such acts; or
b)  is the intended result of such acts.

This exclusion will not apply to an innocent spouse or **insured person** who did not contribute to such



loss or to the interest of an innocent spouse or **insured person** in the damaged property.

This exclusion applies regardless of whether the **insured person** is actually charged with, or convicted of, a crime.

3. Planning, Construction or Maintenance, meaning faulty, inadequate or defective:
   a) planning, zoning, development, surveying, siting;
   b) design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
   c) materials used in repair, construction, renovation or remodeling; or
   d) maintenance;

   of property whether on or off the **residence premises** by any person or organization.

# Section I Additional Protection

1. **Additional Living Expense**
   **We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

   Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
   a) the time period required to repair or replace the property **we** cover, using due diligence and dispatch;
   b) if **you** permanently relocate, the shortest time for **your** household to settle elsewhere; or
   c) 12 months.

   These periods of time are not limited by the termination of this policy.

In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

**We** do not cover any lost income or expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

2. **Civil, Governmental And Military Authorities**
   **We** will pay the reasonable and necessary increase in living expenses up to $150 per day, for up to two weeks should civil, governmental or military authorities prohibit the use of the **residence premises** due to a loss at a neighboring premises caused by an event, peril or condition **we** insure against under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**. However, payments for increase in living expenses due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

   The two-week period of time referenced above is not limited by the termination of this policy.

   No deductible applies to this protection.

3. **Debris Removal**
   **We** will pay reasonable expenses **you** incur to remove debris of covered property damaged by a loss **we** cover. If the loss to the covered property and the cost of debris removal are more than the Limit Of Liability shown on the Policy Declarations for the covered property, **we** will pay up to an additional 5% of that limit for debris removal.

4. **Emergency Removal Of Property**
   **We** will pay for **sudden and accidental** direct physical loss to covered property from any cause while removed from a premises because of danger from a loss **we** cover. Protection is limited to a 30-day period from date of removal. This protection does not increase the limit of liability that applies to the covered property.

5. **Fire Department Charges**
   **We** will pay up to $500 for service charges made by fire departments called to protect **your** property from a loss **we** cover at the **residence premises**.

House & Home Policy
Policy number:



No deductible applies to this protection.

6. **Temporary Repairs After A Loss**
**We** will reimburse **you** up to $5,000 for the reasonable and necessary cost **you** incur for temporary repairs to protect covered property from further imminent covered loss following a loss **we** cover. This coverage does not increase the limit of liability applying to the property being repaired.

7. **Trees, Shrubs, Plants And Lawns**
**We** will pay up to 5% of the Limit Of Liability shown on the Policy Declarations under **Dwelling Protection–Coverage A** for loss to trees, shrubs, plants and lawns at the address of the **residence premises**. **We** will not pay more than $500 for any one tree, shrub, or plant, including expenses incurred for removing debris. This coverage applies only to **sudden and accidental** direct physical loss caused by fire or lightning, explosion, riot or civil commotion, aircraft, vehicles not owned by an occupant of the **residence premises**, vandalism or malicious mischief, theft, or collapse of a **building structure** or any part of a **building structure**.

**We** will pay up to $500 for reasonable expenses **you** incur for the removal of debris of trees at the address of the **residence premises** for **sudden and accidental** direct physical loss caused by **windstorm**, hail, or weight of ice, snow or sleet. The fallen tree must have caused damage to property covered under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**.

**We** do not cover trees, shrubs, plants, or lawns grown for **business** purposes.

This coverage does not increase the **Dwelling Protection–Coverage A** limit of liability.

8. **Power Interruption**
**We** will pay up to $500 for loss to the contents of freezers and refrigerated units on the **residence premises** caused by the interruption of power which occurs off the **residence premises**. If a power interruption is known to an **insured person**, all reasonable means must be used to protect the contents of freezers and refrigerated units.

This coverage does not increase the limit of liability applying to the damaged property.

9. **Arson Reward**
**We** will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under **Section I** of this policy. The $5,000 limit applies regardless of the number of persons providing information.

10. **Collapse**
**We** will cover at the **residence premises**:
a) the entire collapse of a covered **building structure**;
b) the entire collapse of part of a covered **building structure**; and
c) direct physical loss to covered property caused by a) or b) above.

For coverage to apply, the collapse of a **building structure** specified in a) or b) above must be a **sudden and accidental** direct physical loss caused by one or more of the following:
a) a loss **we** cover under **Section I**, **Losses We Cover Under Coverages A, B and C**;
b) weight of persons, animals, equipment or contents;
c) weight of rain, snow or ice which collects on a roof;
d) defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

Collapse, as referenced herein, means the covered **building structure** or part of the covered **building structure** has actually fallen down or fallen into pieces unexpectedly and instantaneously. It does not include settling, cracking, shrinking, bulging, expansion, sagging, or bowing. Furthermore, collapse does not include or mean substantial structural impairment or imminent collapse.

Loss to an awning, fence, patio, deck, pavement, swimming pool, underground pipe, flue, drain, cesspool, fuel oil tank, septic tank, cistern or similar system, foundation, retaining wall, bulkhead, pier, wharf or dock is not included, unless the loss is a direct result of the collapse of a **building structure** or part of a **building structure** that is a **sudden and accidental** direct physical loss caused by one or more of the following:
a) a loss **we** cover under **Section I**, **Losses We Cover Under Coverages A, B and C**;
b) weight of persons, animals, equipment or contents;
c) weight of rain, snow or ice which collects on a roof; or



d)  defective methods or materials used in construction, repair, remodeling or renovation, but only if the collapse occurs in the course of such construction, repair, remodeling or renovation.

This coverage does not increase the limit of liability applying to the covered property.

11.  **Lock Replacement**
When a key to a lock is stolen as part of a covered theft loss, **we** will pay, under **Dwelling Protection–Coverage A** or **Other Structures Protection–Coverage B**, as applicable, up to $500 for the reasonable expenses **you** incur to replace or re-key exterior door locks at the **residence premises** with locks or cylinders of like kind and quality.

This coverage does not increase the limit of liability that applies to the covered property.

12.  **Foundation Water Damage**
In the event of the **sudden and accidental** discharge or overflow of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system where the source of the discharge or overflow is located within or below the slab or foundation of the **dwelling**, **we** will pay up to the amount shown on the Policy Declarations for:
a)  tearing out and replacing any part of the **dwelling** necessary to access, repair or replace that part of such system, and
b)  loss to property covered under **Dwelling Protection–Coverage A** and **Personal Property Protection–Coverage C** that results from the **sudden and accidental** escape of water or steam from within a plumbing, heating or air conditioning system, household appliance, fire protection or sprinkler system located within the slab or foundation of the **dwelling**.

This coverage does not include damage to the system from which the water or steam escaped.

# Section I Conditions

1.  **Deductible**
**We** will pay when a covered loss exceeds the applicable deductible shown on the Policy Declarations. **We** will then pay only the excess amount, unless **we** have indicated otherwise in this policy.

2.  **Insurable Interest And Our Liability**
In the event of a covered loss, **we** will not pay for more than an **insured person's** insurable interest in the property covered, nor more than the amount of coverage afforded by this policy.

**Section 862.053 Policy A Liquidated Demand.** A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

3.  **What You Must Do After A Loss**
In the event of a loss to any property that may be covered by this policy, **you** must:
a)  promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible.
b)  protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
c)  separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
d)  give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
e)  produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
f)  as often as **we** reasonably require:
1)  show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.
2)  at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.
3)  produce representatives, employees, members of the **insured person's** household or others to

House & Home Policy
Policy number:



the extent it is within the **insured person's** power to process **your** claim. So do so; and

g) within 91 days after the loss, give **us** a signed, sworn proof of the loss. This statement must include the following information:

1) the date, time, location and cause of loss;

2) the interest **insured persons** and others have in the property, including any encumbrances;

3) the actual cash value and amount of loss for each item damaged, destroyed or stolen;

4) any other insurance that may cover the loss;

5) any changes in title, use, occupancy or possession of the property that have occurred during the policy period; and

6) at **our** request, the specifications of any damaged **building structure** or other structure.

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

4. **Our Duties After Loss**

a) Within 15 days after **we** receive **your** written notice of claim, **we** must:

1) acknowledge receipt of the claim. If **our** acknowledgement of the claim is not in writing, **we** will keep a record of the date, method and content of **our** acknowledgment;

2) begin any investigation of the claim; and

3) specify the information **you** must provide in accordance with **Section I, Conditions** item 3 "What You Must Do After A Loss."

We may request more information, if during the investigation of the claim such additional information is necessary.

b) After **we** receive the information **we** request, **we** must notify **you** in writing whether the claim will be paid or has been denied or whether more information is needed:

1) within 15 **business days**; or

2) within 30 days if **we** have reason to believe the loss resulted from arson.

c) If **we** do not approve payment of **your** claim or require more time for processing **your** claim, **we** must:

1) give the reasons for denying **your** claim; or

2) give the reasons **we** require more time to process **your** claim. But, **we** must either approve or deny **your** claim within 45 days after requesting more time.

5. **Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5, "How We Pay For A Loss."

Within 30 days after **we** receive **your** signed, sworn proof of loss, **we** will notify **you** of the option or options **we** intend to exercise.

6. **How We Pay For A Loss**

Under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** and **Personal Property Protection–Coverage C**, payment for covered loss will be by one or more of the following methods:

a) Special Payment. At **our** option, **we** may make payment for a covered loss before **you** repair, rebuild or replace the damaged, destroyed or stolen property if:

1) the whole amount of loss for property covered under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, without deduction for depreciation, is less than $2,500 and if the property is not excluded from the Building Structure Reimbursement provision; or

2) the whole amount of loss for property covered under **Personal Property Protection–Coverage C**, without deduction for depreciation, is less than $2,500, **your** Policy Declarations shows that the Personal Property Reimbursement provision applies, and the property is not excluded from the Personal Property Reimbursement provision.

b) Actual Cash Value. If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis. This means there may be a deduction for depreciation. Payment will not exceed the Limit Of Liability shown on the Policy Declarations for the coverage that applies to the



damaged, destroyed or stolen property, regardless of the number of items involved in the loss.

**You** may make claim for additional payment as described in paragraph c) and paragraph d) below if applicable, if **you** repair or replace the damaged, destroyed or stolen covered property within 365 days after the loss unless **you** request in writing that this time limit be extended for an additional 180 days.

c)   Building Structure Reimbursement. Under **Dwelling Protection–Coverage A** and **Other Structures Protection–Coverage B**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 365 days after the loss unless **you** request in writing that this time limit be extended for an additional 180 days.

This additional payment includes the reasonable and necessary expense for treatment or removal and disposal of contaminants, toxins or pollutants as required to complete repair or replacement of that part of a **building structure** damaged by a covered loss. This additional payment shall not include any amounts which may be paid or payable under **Section I Conditions, Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**, and shall not be payable for any losses excluded in **Section I— Your Property**, under **Losses We Do Not Cover Under Coverages A, B, And C**, paragraph B.

Building Structure Reimbursement will not exceed the smallest of the following amounts:
1)   the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence premises**;
2)   the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or
3)   the Limit Of Liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Dwelling Protection-Coverage A** or **Other Structures Protection-Coverage B**, regardless of the number of **building structures**

and structures other than **building structures** involved in the loss.

If **you** replace the damaged **building structure(s)** at an address other than shown on the Policy Declarations through construction of a new structure or purchase of an existing structure, such replacement will not increase the amount payable under Building Structure Reimbursement described above. The amount payable under Building Structure Reimbursement described above does not include the value of any land associated with the replacement structure(s).

Building Structure Reimbursement payment will be limited to the difference between any actual cash value payment made for the covered loss to **building structures** and the smallest of 1), 2) or 3) above.

Building Structure Reimbursement will not apply to:
1)   property covered under **Personal Property Protection-Coverage C**;
2)   property covered under **Other Structures Protection-Coverage B** that is not a **building structure**;
3)   wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**;
4)   **roof surface(s)** when the loss is caused by **windstorm** or hail; or
5)   land.

Payment under a), b) or c) above will not include any increased cost due to the enforcement of building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, relocation or demolition of **building structures** or other structures.

d)   Personal Property Reimbursement. Under **Personal Property Protection-Coverage C**, **we** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered personal property or wall-to-wall carpeting within 365 days of the loss.

Personal Property Reimbursement payment will not exceed the smallest of the following amounts:

House & Home Policy
Policy number:



1) the amount actually and necessarily spent to repair or replace the property with similar property of like kind and quality;
2) the cost of repair or restoration; or
3) the Limit Of Liability shown on the Policy Declarations for **Personal Property Protection– Coverage C**, or any special limit of liability described in the policy, regardless of the number of items of personal property involved in the loss.

Personal Property Reimbursement will be limited to the difference between any actual cash value payment made for the covered loss to personal property and the smallest of 1), 2) or 3) above.

Personal Property Reimbursement will not apply to:
1) property insured under **Dwelling Protection– Coverage A** and **Other Structures Protection– Coverage B**, except wall-to-wall carpeting;
2) antiques, fine arts, paintings, statuary and similar articles which, by their inherent nature, cannot be replaced;
3) articles whose age or history contribute substantially to their value. This includes, but is not limited to, memorabilia, souvenirs and collector's items;
4) property that was obsolete or unusable for the originally intended purpose because of age or condition prior to the loss; or
5) motorized land vehicles used solely for the service of the **insured premises** and not licensed for use on public roads. This does not include motorized land vehicles designed for assisting the disabled and not licensed for use on public roads.

7. **Our Settlement Of Loss**
   **We** will settle any covered loss with **you** unless some other person or entity is named in the policy. **We** will settle within 5 **business days** after the amount of loss is finally determined. This amount may be determined by an agreement between **you** and **us**, an appraisal award or a court judgment.

   If **we** notify **you** that **we** will pay **your** claim, or part of **your** claim, **we** must pay within 5 **business days** after **we** notify **you**. If payment of **your** claim or part of **your** claim requires the performance of an act by **you**, **we** must pay within 5 **business days** after the date **you** perform the act.

8. **Appraisal**
   If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.

   The appraisers shall then determine the amount of loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and to **us**, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of loss.

   Each party will pay the appraiser it chooses, and equally bear expenses for the umpire and all other appraisal expenses.

9. **Abandoned Property**
   **We** are not obligated to accept any property or responsibility for any property abandoned by an **insured person**.

10. **Permission Granted To You**
    a) The **residence premises** may be vacant or unoccupied for any length of time, except where a time limit is indicated in this policy. A **building structure** under construction is not considered vacant.
    b) **You** may make alterations, additions or repairs, and **you** may complete structures under construction.

11. **Our Rights To Recover Payment**
    When **we** pay for any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them. **You** may waive **your** rights to recover against another person for loss involving the property covered by this policy. This waiver must be in writing prior to the date of loss.

12. **Our Rights To Obtain Salvage**
    **We** have the option to take all or any part of the damaged or destroyed covered property upon



replacement by **us** or payment of the agreed or appraised value.

**We** will notify **you** of **our** intent to exercise this option within 30 days after **we** receive **your** signed, sworn proof of loss. If no signed, sworn proof of loss is requested by **us**, **we** will notify **you** of **our** intent to exercise this option within 60 days after the date **you** report the loss to **us**.

When **we** settle any loss caused by theft or disappearance, **we** have the right to obtain all or part of any property which may be recovered. An **insured person** must protect this right and inform **us** of any property recovered. **We** will inform **you** of **our** intent to exercise this right within 10 days of **your** notice of recovery to **us**.

13. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
a) there has been full compliance with all policy terms; and
b) the action is commenced within two years and one day from the date the cause of action first accrues.

14. **Loss To A Pair Or Set**
If there is a covered loss to a pair or set, **we** may:
a) repair or replace any part of the pair or set to restore it to its actual cash value before the loss; or
b) pay the difference between the actual cash value of the pair or set before and after the loss.

15. **Glass Replacement**
Payment for loss to covered glass includes the cost of using safety glazing materials when required by law.

16. **No Benefit To Bailee**
This insurance will not benefit any person or organization that may be caring for or handling **your** property for a fee.

17. **Other Insurance**
If both this insurance and other insurance apply to a loss, **we** will pay the proportionate amount that this insurance bears to the total amount of all applicable insurance. However, in the event of a loss by theft, this insurance shall be excess over any other insurance that covers loss by theft.

18. **Property Insurance Adjustment**
At each policy renewal, **we** may increase the Limit Of Liability shown on the Policy Declarations for **Dwelling Protection-Coverage A** to reflect the minimum amount of insurance coverage **we** are willing to issue for the succeeding policy period under **Dwelling Protection-Coverage A** for **your** dwelling and other property **we** cover under **Dwelling Protection-Coverage A**.

Any adjustment in the limit of liability for **Dwelling Protection-Coverage A** will result in an adjustment in the limit of liability for **Other Structures Protection-Coverage B** and **Personal Property Protection-Coverage C** in accordance with **our** manual of Rules and Rates.

Any adjustment in premium resulting from the application of this condition will be made based on premium rates in use by **us** at the time a change in limits is made.

**We** will not reduce the Limit Of Liability shown on the Policy Declarations without **your** consent. **You** agree that it is **your** responsibility to ensure that each of the Limits Of Liability shown on the Policy Declarations are appropriate for **your** insurance needs. If **you** want to increase or decrease any of the Limits Of Liability shown on the Policy Declarations, **you** must contact **us** to request such a change.

19. **Mortgagee**
A covered loss will be payable to the mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a) protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal acts of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b) give the mortgagee at least 10 days notice if **we** cancel this policy.

The mortgagee will:
a) furnish proof of loss within 91 days after notice of the loss if an **insured person** fails to do so;

House & Home Policy
Policy number:



b)  pay upon demand any premium due if an **insured person** fails to do so;
c)  notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d)  give **us** the mortgagee's right of recovery against any party liable for loss; and
e)  after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

If property covered under **Dwelling Protection-Coverage A** is foreclosed upon under a deed of trust, the mortgagee of that property may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send the refund, if any, to the mortgagee.

The mortgagee must credit the refund against any deficiency owed by **you** and return any amount not so credited to **you**.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

20. **Catastrophe Claims**
If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the **What You Must Do After A Loss, Our Duties After Loss** and **Our Settlement Of Loss** conditions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:
a)  is declared a disaster under the Texas Disaster Act of 1975; or
b)  is determined to be a catastrophe by the Texas Department of Insurance.

21. **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**
In the event of a covered water loss under **Dwelling Protection-Coverage A, Other Structures Protection-Coverage B** or **Personal Property Protection-Coverage C, we** will pay up to $5,000 for mold, fungus, wet rot or dry rot or other microbes **remediation**.

**Remediation** means the reasonable and necessary treatment, removal or disposal of mold, fungus, wet rot or dry rot as required to complete repair or replacement of property **we** cover under **Dwelling Protection-**

**Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** damaged by a covered water loss, including payment for any reasonable increase in living expenses necessary to maintain **your** normal standard of living if mold, fungus, wet rot or dry rot makes **your residence premises** uninhabitable. **Remediation** also includes any investigation or testing to detect, measure or evaluate mold, fungus, wet rot or dry rot.

This Condition does not increase the limits of liability under **Dwelling Protection–Coverage A, Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C**.

# Section II—Family Liability And Guest Medical Protection

## Family Liability Protection–Coverage X

### Losses We Cover Under Coverage X:
Subject to the terms, conditions and limitations of this policy, **we** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.

**We** may investigate or settle any claim or suit for covered damages against an **insured person**. If an **insured person** is sued for these damages, **we** will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent. **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

### Losses We Do Not Cover Under Coverage X:
1.  **We** do not cover **bodily injury** or **property damage** which is caused intentionally by or at the direction of an **insured person**.

    **We** will not apply this exclusion to an innocent spouse or **insured person** who did not cooperate in, or contribute to, such **bodily injury** or **property damage**.

2.  **We** do not cover **bodily injury** to an **insured person** or **property damage** to property owned by an **insured person** whenever any benefit of this coverage would accrue directly or indirectly to an **insured person**.

3.  **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or



voluntarily provided, by an **insured person** under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheelchair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower; or
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be operated by a person or persons sitting, standing or kneeling on the craft.

**We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** or **property damage** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**;

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

   **We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is **sudden and accidental**.

9. **We** do not cover any **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

10. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which results in any manner from vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

11. **We** do not cover **bodily injury** or **property damage** arising out of the rendering of, or failure to render, professional services by an **insured person**.

12. **We** do not cover **bodily injury** or **property damage** arising out of the past or present **business** activities of an **insured person**.

    **We** will not apply this exclusion to **bodily injury** or **property damage** arising from the occasional or part-

064 070 070
13O703IN 00159
310C020N 00159O64TXO001307O123372900O159O150310O33253

House & Home Policy

Policy number:



time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

13. **We** do not cover **bodily injury** or **property damage** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

14. **We** do not cover **property damage** to property rented to, occupied or used by, or in the care of, an **insured person**. **We** will not apply this exclusion if the **property damage** is caused by fire, explosion or smoke.

15. **We** do not cover any liability an **insured person** assumes arising out of any contract or agreement.

16. **We** do not cover **bodily injury** or **property damage** caused by:
    a) war, whether declared or undeclared;
    b) warlike acts;
    c) invasion;
    d) insurrection;
    e) rebellion;
    f) revolution;
    g) civil war;
    h) usurped power;
    i) destruction for a military purpose; or
    j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

17. **We** do not cover **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

18. **We** do not cover any liability imposed upon any **insured person** by any civil, governmental or military authority for **bodily injury** or **property damage** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

19. **We** do not cover any loss, cost or expense arising out of any request, demand, or order that any **insured person** test for, monitor, clean up, remove, contain, treat, detoxify, decontaminate, or neutralize, or in any way respond to or assess the effects of any type of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals,

toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

20. **We** do not cover **bodily injury** or **property damage** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** or **property damage** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke.

21. **We** do not cover **bodily injury** or **property damage** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

# Guest Medical Protection–Coverage Y

## Losses We Cover Under Coverage Y:

**We** will pay the reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ambulance, hospital, licensed nursing and funeral services, and prosthetic devices, eye glasses, hearing aids, and pharmaceuticals. These expenses must be incurred and the services performed within three years from the date of an **occurrence** causing **bodily injury** to which this policy applies, and is covered by this part of the policy.

Each person who sustains **bodily injury** is entitled to this protection when that person is:

1. on the **insured premises** with the permission of an **insured person**; or

2. off the **insured premises**, if the **bodily injury**:
   a) arises out of a condition on the **insured premises** or immediately adjoining ways;
   b) is caused by the activities of an **insured person** or a **residence employee**;
   c) is caused by an animal owned by or in the care of an **insured person**; or
   d) is sustained by a **residence employee**.

## Losses We Do Not Cover Under Coverage Y:

1. **We** do not cover **bodily injury** which is caused intentionally by or at the direction of an **insured person**.

   **We** will not apply this exclusion to an innocent spouse or **insured person** who did not cooperate in, or contribute to, such **bodily injury**.



2. **We** do not cover **bodily injury** to any **insured person** or regular resident of the **insured premises**. **We** will not apply this exclusion to a **residence employee**.

3. **We** do not cover **bodily injury** to any person eligible to receive any benefits required to be provided, or voluntarily provided, under any workers' compensation, non-occupational disability or occupational disease law.

4. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of aircraft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

5. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any motor vehicle or trailer. **We** will not apply this exclusion to:
   a) a motor vehicle in dead storage or used exclusively on an **insured premises**;
   b) any motor vehicle designed principally for recreational use off public roads, unless that vehicle is owned by an **insured person** and is being used away from an **insured premises**;
   c) a motorized wheelchair;
   d) a vehicle used to service an **insured premises** which is not designed for use on public roads and not subject to motor vehicle registration;
   e) a golf cart owned by an **insured person** when used for golfing purposes;
   f) a trailer of the boat, camper, home or utility type unless it is being towed or carried by a motorized land vehicle;
   g) lawn or garden implements under 40 horsepower; or
   h) **bodily injury** to a **residence employee**.

6. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of watercraft away from an **insured premises** if the watercraft:
   a) has inboard or inboard-outboard motor power of more than 50 horsepower;
   b) is a sailing vessel 26 feet or more in length;
   c) is powered by one or more outboard motors with more than 25 total horsepower;
   d) is designated as an airboat, air cushion, or similar type of watercraft; or
   e) is a personal watercraft, meaning a craft propelled by a water jet pump engine and designed to be

operated by a person or persons sitting, standing or kneeling on the craft.

   **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

7. **We** do not cover **bodily injury** arising out of:
   a) the negligent supervision by any **insured person** of any person; or
   b) any liability statutorily imposed on any **insured person**;

   arising from the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of any aircraft, watercraft, hovercraft, motorized land vehicle or trailer which is not covered under **Section II** of this policy.

8. **We** do not cover any **bodily injury** which results in any manner from the discharge, dispersal, release or escape of vapors, fumes, smoke, smog, soot, alkalis, acids, toxic chemicals, toxic gasses, toxic liquids, toxic solids, waste materials, or other irritants, contaminants or pollutants.

   **We** will not apply this exclusion to **bodily injury** which results from such discharge, dispersal, release or escape, if the discharge, dispersal, release or escape is **sudden and accidental**.

9. **We** do not cover **bodily injury** arising out of the rendering of, or failure to render, professional services by an **insured person**.

10. **We** do not cover **bodily injury** arising out of the past or present **business** activities of an **insured person**.

   **We** will not apply this exclusion to **bodily injury** arising from the occasional or part-time **business** activities of an **insured person** who is a student under 21 years of age who is self-employed and has no employees.

11. **We** do not cover **bodily injury** to any person on the **insured premises** because of a **business** activity or professional service conducted there.

12. **We** do not cover **bodily injury** arising out of any premises, other than an **insured premises**, owned, rented or controlled by an **insured person**. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

13. **We** do not cover **bodily injury** caused by:

Certified Copy of Office of Marilyn Burgess District Clerk

House & Home Policy
Policy number:



a) war, whether declared or undeclared;
b) warlike acts;
c) invasion;
d) insurrection;
e) rebellion;
f) revolution;
g) civil war;
h) usurped power;
i) destruction for a military purpose; or
j) action taken by civil, governmental or military authority to hinder or defend against an actual or impending enemy act.

14. **We** do not cover **bodily injury** which, in whole or in part, arises out of, is aggravated by or results from mold, fungus, wet rot, dry rot or other microbes.

15. **We** do not cover **bodily injury** arising out of nuclear hazard, meaning nuclear reaction, discharge, radiation or radioactive contamination, or any consequence of any of these. **Bodily injury** arising out of a nuclear hazard is not considered as arising from fire, explosion or smoke

16. **We** do not cover **bodily injury** arising out of the ownership, maintenance, use, occupancy, renting, loaning, entrusting, loading or unloading of hovercrafts. **We** will not apply this exclusion to **bodily injury** to a **residence employee**.

## Section II Additional Protection
**We** will pay, in addition to the limits of liability:
1. **Claim Expenses**
   **We** will pay:
   a) all costs **we** incur in the settlement of any claim or the defense of any suit against an **insured person**;
   b) interest accruing on damages awarded until such time as **we** have paid, formally offered, or deposited in court the amount for which **we** are liable under this policy; interest will be paid only on damages which do not exceed **our** limits of liability;
   c) premiums on bonds required in any suit **we** defend; **we** will not pay bond premiums in an amount that is more than **our** limit of liability; **we** have no obligation to apply for or furnish bonds;
   d) up to $150 per day for loss of wages and salary, when **we** ask **you** to attend trials and hearings;
   e) any other reasonable expenses incurred by an **insured person** at **our** request.

2. **Emergency First Aid**
   **We** will pay reasonable expenses incurred by an **insured person** for first aid to other persons at the time of an accident involving **bodily injury** covered under this policy.

3. **Damage To Property Of Others**
   At **your** request, **we** will pay up to $1,000 each time an **insured person** causes **property damage** to someone else's property. At **our** option, **we** will pay the cost to either repair or replace the property damaged by an **insured person**, without deduction for depreciation.

   **We** will not pay for **property damage**:
   a) to property covered under **Section I** of this policy;
   b) to property intentionally damaged by an **insured person** who has attained the age of 13;
   c) to property owned by or rented to an **insured person**, any tenant of an **insured person**, or any resident in **your** household; or
   d) arising out of:
      1) past or present **business** activities;
      2) any act or omission in connection with a premises, other than an **insured premises**, owned, rented or controlled by an **insured person**; or
      3) the ownership or use of a motorized land vehicle, trailer, aircraft, hovercraft or watercraft.

## Section II Conditions
1. **What You Must Do After A Loss**
   In the event of **bodily injury** or **property damage**, **you** must do the following:
   a) Promptly notify **us** or **our** agent stating:
      1) **your** name and policy number;
      2) the date, the place and the circumstances of the loss;
      3) the name and address of anyone who might have a claim against an **insured person**;
      4) the names and addresses of any witnesses.
   b) Promptly send **us** any legal papers relating to the accident.
   c) At **our** request, an **insured person** will:
      1) cooperate with **us** and assist **us** in any matter concerning a claim or suit;
      2) help **us** enforce any right of recovery against any person or organization who may be liable to an **insured person**;
      3) attend any hearing or trial.



d) Under the **Damage To Property Of Others** protection, give **us** a sworn statement of the loss. This must be made within 91 days after the date of loss. Also, an **insured person** must be prepared to show **us** any damaged property under that person's control.

Any **insured person** will not voluntarily pay any money, assume any obligations or incur any expense, other than for first aid to others at the time of the loss as provided for in this policy.

2. **What An Injured Person Must Do—Guest Medical Protection–Coverage Y**
If someone is injured, that person, or someone acting for that person, must do the following:
a) Promptly give **us** written proof of the loss. If **we** request, this must be done under oath.
b) Give **us** written authorization to obtain copies of all medical records and reports.
c) Permit doctors **we** select to examine the injured person as often as **we** may reasonably require.

3. **Our Payment Of Loss—Guest Medical Protection– Coverage Y**
**We** may pay the injured person or the provider of the medical services. Payment under this coverage is not an admission of liability by **us** or an **insured person**.

4. **Our Limits Of Liability**
Regardless of the number of **insured persons**, injured persons, claims, claimants or policies involved, **our** total liability under **Family Liability Protection–Coverage X** for damages resulting from one **occurrence** will not exceed the Limit Of Liability shown on the Policy Declarations. All **bodily injury** and **property damage** resulting from continuous or repeated exposure to the same general conditions is considered the result of one **occurrence**.

**Our** total liability under **Guest Medical Protection– Coverage Y** for all medical expenses payable for **bodily injury**, to any one person, shall not exceed the "each person" Limit Of Liability shown on the Policy Declarations.

5. **Bankruptcy**
**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an **insured person**.

6. **Our Rights To Recover Payment—Family Liability Protection–Coverage X**
When **we** pay any loss, an **insured person's** right to recover from anyone else becomes **ours** up to the amount **we** have paid. An **insured person** must protect these rights and help **us** enforce them.

7. **Action Against Us**
a) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, unless there has been full compliance with all policy terms.
b) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Family Liability Protection–Coverage X**, unless the obligation of an **insured person** to pay has been finally determined either by judgment against the **insured person** after actual trial, or by written agreement of the **insured person**, injured person and **us**, and the action against **us** is commenced within two years and one day from the date the cause of action first accrues.
c) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Guest Medical Protection–Coverage Y**, unless such action is commenced within two years and one day from the date the cause of action first accrues.
d) No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under **Section II Additional Protection**, unless such action is commenced within two years and one day from the date the cause of action first accrues .
e) No one shall have any right to make **us** a party to an action to determine the liability of an **insured person**.

8. **Other Insurance—Family Liability Protection– Coverage X**
This insurance is excess over any other valid and collectible insurance except insurance that is written specifically as excess over the limits of liability that apply to this policy.

9. **Notice Of Settlement Of Liability Claim**
a) **We** will notify the **insured person** in writing of any initial offer to compromise or settle a claim against the **insured person** under the liability section of this

House & Home Policy
Policy number:



policy. **We** will give the **insured person** notice within 10 days after the date the offer is made.

b) **We** will notify the **insured person** in writing of any settlement of a claim against the **insured person** under the liability section of this policy. **We** will give the **insured person** notice within 30 days after the date of the settlement.

# Section III—Optional Protection

## Optional Coverages

The following Optional Coverages may supplement coverages found in **Section I** or **Section II** and apply only when they are indicated on the Policy Declarations. The provisions of this policy apply to each Optional Coverage in this section unless modified by the terms of the specific Optional Coverage.

1.  **Building Codes–Coverage BC**
    **We** will pay up to the Limit Of Liability shown on the Policy Declarations for Building Codes coverage to comply with local building codes after covered loss to the **dwelling** or when repair or replacement results in increased cost due to the enforcement of any building codes, ordinances or laws regulating or requiring the construction, reconstruction, maintenance, replacement, repair, placement or demolition of the **dwelling**.

2.  **Increased Coverage On Business Property–Coverage BP**
    The limitation on **business** property located on the **residence premises**, under **Personal Property Protection–Coverage C**, is increased to the amount shown on the Policy Declarations. This increased coverage includes property held as samples or for sale or delivery after sale, while the property is on the **residence premises**.

3.  **Fire Department Charges–Coverage F**
    The $500 limit applying to the fire department service charges under **Additional Protection** is increased to the amount shown on the Policy Declarations.

4.  **Loss Assessments–Coverage G**
    If **your residence premises** includes a **building structure** which is constructed in common with one or more similar buildings, and **you** are a member of, and subject to the rules of, an association governing the areas held in common by all building owners as members of the association, the **insured premises** means the **building structure** occupied exclusively by **your** household as a

private residence, including the grounds, related structures and private approaches to them.

**We** will pay **your** share of any special assessments charged against all building owners by the association up to the Limit Of Liability shown on the Policy Declarations, when the assessment is made as a result of:

a)  **sudden and accidental** direct physical loss to the property held in common by all building owners caused by a loss **we** cover under **Section I** of this policy; or

b)  **bodily injury** or **property damage** covered under **Section II** of this policy.

Any reduction or elimination of payments for losses because of any deductible applying to the insurance coverage of the association of building owners collectively is not covered under this protection.

**We** will pay only when the assessment levied against the **insured person**, as a result of any one loss, for **bodily injury** or **property damage** exceeds $500 and then only for the amount of such excess. This coverage is not subject to any deductible applying to **Section I** of this policy.

In the event of an assessment, this coverage is subject to all the exclusions applicable to **Sections I** and **II** of this policy and the **Section I** and **II Conditions**, except as otherwise noted.

This coverage is excess over any insurance collectible under any policy or policies covering the association of building owners.

5.  **Extended Coverage On Jewelry, Watches And Furs–Coverage J**
    **Personal Property Protection–Coverage C** is extended to pay for **sudden and accidental** direct physical loss to the following property, subject to the provisions in this coverage:

    a)  jewelry, watches, gems, precious and semi-precious stones, gold, platinum; and

    b)  furs, including any item containing fur which represents its principal value.

    The total amount of coverage and per item limit is shown on the Policy Declarations. This amount is not in addition to the amount of insurance applying to **Personal Property Protection–Coverage C**. However, in no event



will coverage be less than would have applied in the absence of **Coverage J**.

The following exclusions contained in **Losses We Do Not Cover Under Coverages A, B and C** apply to the coverage afforded under this **Coverage J**: items A.7, A.8, D.1 and D.3. In addition, **we** do not cover any loss consisting of or caused by one or more of the following excluded events, perils or conditions. Such loss is excluded regardless of whether the excluded event, peril or condition involves isolated or widespread damage, arises from natural, man-made or other forces, or arises as a result of any combination of these forces.

a)   wear and tear;
b)   gradual deterioration;
c)   inherent vice; or
d)   insects or vermin.

Any deductible shown on the Policy Declarations applicable to **Personal Property Protection–Coverage C**, also applies to a loss under this coverage.

6.   **Increased Coverage On Theft Of Silverware–Coverage ST**
The $2,500 limitation on theft of goldware, silverware, pewterware and platinumware under **Personal Property Protection–Coverage C** is increased to the amount shown on the Policy Declarations.

**Policy Endorsement**



*The following endorsement changes your policy.*
*Please read this document carefully and keep it with*
*your policy.*

## Roof Surfaces Extended Coverage Endorsement – AVP144-1

In **Section I Conditions**, item 6, **How We Pay For A Loss**, provision c) (titled "Building Structure Reimbursement.") the sixth paragraph is replaced by the following:

Building Structure Reimbursement will not apply to:
1) property covered under **Personal Property Protection–Coverage C**;
2) property covered under **Other Structures Protection–Coverage B** that is not a **building structure**;
3) wall-to-wall carpeting, fences, awnings and outdoor antennas, whether or not fastened to a **building structure**; or
4) land.

All other policy terms and conditions apply.

# Policy Endorsement

*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Texas Amendatory Endorsement – AVP345

In **Section I Conditions**, the following changes are made:

A.  Item 3, **What You Must Do After A Loss**, is replaced by the following:

3.  **What You Must Do After A Loss**
    In the event of a loss to any property that may be covered by this policy, **you** must:
    a)  promptly give **us** or **our** agent notice. Report any theft to the police as soon as possible.
    b)  protect the property from further loss. Make any reasonable repairs necessary to protect it. Keep an accurate record of any repair expenses.
    c)  separate damaged from undamaged personal property. Give **us** a detailed list of the damaged, destroyed or stolen property, showing the quantity, cost, actual cash value and the amount of loss claimed.
    d)  give **us** all accounting records, bills, invoices and other vouchers, or certified copies, which **we** may reasonably request to examine and permit **us** to make copies.
    e)  produce receipts for any increased costs to maintain **your** standard of living while **you** reside elsewhere, and records supporting any claim for loss of rental income.
    f)  as often as **we** reasonably require:
        1)  show **us** the damaged property. **We** have a right to reasonable and safe opportunities to view and inspect the loss as often as necessary, unimpeded by actions of **you** or others, including, but not limited to, civil, governmental or military authorities, that prevent **us** from viewing and inspecting the loss. **We** may require **you** to accompany **us** when **we** conduct these activities.
        2)  at **our** request, submit to examinations under oath, separately and apart from any other person defined as **you** or **insured person** and sign a transcript of the same.

3)  produce representatives, employees, members of the **insured person's** household or others to the extent it is within the **insured person's** power, to do so; and

g)  Upon **our** request, send to us your signed sworn proof of loss within 91 days of the date of **our** request. This statement must include the following information:
    1)  the date, time, location and cause of loss;
    2)  the interest **insured persons** and others have in the property, including any encumbrances;
    3)  any other insurance that may cover the loss;
    4)  any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
    5)  at **our** request, the specifications of any damaged **building structure** or other structure;
    6)  the estimated or actual cost to repair or replace the property stolen or damaged by the loss with materials of like kind and quality;
    7)  the amount **you** have actually spent to repair or replace the property stolen or damaged by the loss; and
    8)  in the event that **you** give **us** a signed proof of loss, and after submitting that to **us**, **you** determine that you want to include a claim for additional damage or loss, **you** must submit to **us** a supplemental proof of loss which identifies the amount of the additional loss for each item damaged or stolen.

**We** have no duty to provide coverage under this section if **you**, an **insured person**, or a representative of either fail to comply with items a) through g) above, and this failure to comply is prejudicial to **us**.

B.  Item 8, **Appraisal**, is replaced by the following:

8.  **Appraisal**
    If **you** and **we** fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such demand, each party shall select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire then an umpire will be appointed in the following manner:

Policy endorsement



a) **You** or **we** will request the American Arbitration Association (AAA) to select an umpire at:

American Arbitration Association
Case Filing Services
Attn: Allstate Texas Appraisal
1101 Laurel Oak Road Ste 100
Voorhees, New Jersey 08043
Email: casefiling@adr.org
(with subject matter as "Allstate Texas Appraisal")

b) Only if AAA advises **you** and **us** in writing that it cannot appoint an umpire may **we** then jointly request a judge of a district court in the judicial district where the **residence premises** is located to select an umpire. A judge of a district court does not include a commissioner or a judge of a county court at law, or a justice court, a municipal court, a probate court, or of a commissioner's court.

The appraisers shall then determine the amount of the loss, stating separately the actual cash value and the amount of loss to each item. If the appraisers submit a written report of an agreement to **you** and **us**, the amount agreed upon shall be the amount of the loss. If they cannot agree, they will submit their differences to the umpire. A written award agreed upon by any two will determine the amount of the loss. Each party will pay the appraiser it chooses, and equally bear expense for the umpire and all other appraisal expenses.

If the appraisal process is initiated, the appraisal award shall be binding on **you** and **us** concerning the amount of the loss. **We** reserve the right to deny the appraisal award in part or in its entirety based upon the lack of coverage under the policy or failure to satisfy policy terms.

C. Item 13, **Action Against Us**, is replaced by the following:

13. **Action Against Us**
No one may bring an action against **us** in any way related to the existence or amount of coverage, or the amount of loss for which coverage is sought, under a coverage to which **Section I Conditions** applies, unless:
a) there has been full compliance with all policy terms; and

b) the action is commenced within two years and one day from the date the cause of action first accrues; and

c) in the event that **you** and **we** fail to agree on the amount of loss claimed by **you**, unless **you** have previously provided to **us** a signed sworn proof of loss, it is a condition under this **Action Against Us** provision that no later than 91 days prior to commencing any action against **us** that **we** receive from **you** a signed sworn proof of loss, which contains, to the best of **your** knowledge and belief, the following information:
1) the date, time, location and cause of loss;
2) the interest **insured persons** and others have in the property, including any encumbrances;
3) any other insurance that may cover the loss;
4) any changes in title, use, occupancy or possession of the property that have occurred during the policy period;
5) at **our** request, the specifications of any damaged **building structure** or other structure;
6) the estimated or actual cost to repair or replace the property stolen or damaged by the loss with materials of like kind and quality;
7) the amount you have actually spent to repair or replace the property stolen or damaged by the loss; and
8) in the event that **you** give **us** a signed proof of loss, and after submitting that to **us**, **you** determine that **you** want to include a claim for additional damage or loss, **you** must submit to **us** a supplemental proof of loss which identifies the amount of the additional loss for each item damaged or stolen.

d) If after **we** receive **your** proof of loss as described in paragraph c) above, **you** and **we** are still not able to agree on the amount of loss, then either party may make a written demand for an appraisal, as described in **Section I Conditions, Appraisal**. If this demand for appraisal is made before an action is filed against us in a court of competent jurisdiction, then the appraisal must occur before a suit can be filed against **us**. If the demand for appraisal is made after an action has been filed against us in a court of competent jurisdiction, then the parties agree to ask the court to abate the further proceeding of that action until the appraisal is completed and a

determination of the amount of loss is made as described in **Section I Conditions, Appraisal**.

To initiate the appraisal process either party must provide written notice of the dispute to the other party and make a written demand for appraisal of the amount of loss.

The time limit stated in item 13. b) shall be suspended from the date of the first written demand for appraisal until the date of the appraisal award.

D.   Item 19, **Mortgagee**, is replaced by the following:

19.   **Mortgagee**
A covered loss will be payable to the mortgagee(s) named on the Policy Declarations, to the extent of their interest and in the order of precedence. All provisions of **Section I** of this policy apply to these mortgagees.

**We** will:
a)   protect the mortgagee's interest in a covered **building structure** in the event of an increase in hazard, intentional or criminal of, or directed by, an **insured person**, failure by any **insured person** to take all reasonable steps to save and preserve property after a loss, a change in ownership, or foreclosure if the mortgagee has no knowledge of these conditions; and
b)   give the mortgagee at least 10 days notice if **we** cancel the policy.

The mortgagee will:
a)   furnish proof of loss, upon our request, within 91 days after notice of the loss, if an **insured person** fails to do so;
b)   pay upon demand any premium due if an **insured person** fails to do so;
c)   notify **us** in writing of any change of ownership or occupancy or any increase in hazard of which the mortgagee has knowledge;
d)   give **us** the mortgagees right of recovery against any party liable for loss; and
e)   after a loss, and at **our** option, permit **us** to satisfy the mortgage requirements and receive full transfer of the mortgage.

If property covered under **Dwelling Protection– Coverage A** is foreclosed upon under a deed of trust, the mortgagee of that property may cancel this policy at any time by notifying **us** of the date cancellation is to take effect. **We** will send the refund, if any, to the mortgagee.

The mortgagee must credit the refund against any deficiency owed by **you** and return any amount not credited to **you**.

This mortgagee interest provision shall apply to any trustee or loss payee or other secured party.

All other policy terms and conditions apply.

**Policy Endorsement**



*The following endorsement changes your policy. Please read this document carefully and keep it with your policy.*

## Texas Amendatory Endorsement – AVP348

I.   In **Section I—Your Property**, under **Property We Cover Under Coverage C**, item 1 is replaced by the following:

1.   Personal property owned or used by an **insured person** anywhere in the world. When personal property is located away from the **residence premises**, coverage is limited to 10% of **Personal Property Protection–Coverage C**.

This limitation does not apply to personal property:
a)   in a newly acquired principal residence for the 30 days immediately after **you** begin to move property there; or
b)   in use at a temporary residence when a direct physical loss **we** cover makes **your residence premises** uninhabitable.

II.   In **Section I—Additional Protection**, **Additional Living Expense** is replaced by the following:

1.   **Additional Living Expense**
**We** will pay the reasonable increase in living expenses necessary to maintain **your** normal standard of living when a direct physical loss **we** cover under **Dwelling Protection–Coverage A**, **Other Structures Protection– Coverage B** or **Personal Property Protection– Coverage C** makes **your residence premises** uninhabitable. However, additional living expense due to remediation of mold, fungus, wet rot or dry rot will not be paid in addition to any amounts paid or payable under **Section I Conditions**, **Mold, Fungus, Wet Rot And Dry Rot Or Other Microbes Remediation As A Direct Result Of A Covered Water Loss**.

Payment for additional living expense as a result of a covered loss under **Dwelling Protection–Coverage A**, **Other Structures Protection–Coverage B** or **Personal Property Protection–Coverage C** will be limited to the least of the following:
a)   the time period required to repair or replace the property **we** cover, using due diligence and dispatch;

b)   if **you** permanently relocate, the shortest time for your household to settle elsewhere; or
c)   24 months.

These periods of time are not limited by the termination of this policy.

In no event shall **our** payment for additional living expenses exceed the Limit Of Liability shown on **your** Policy Declarations for Additional Living Expense.

We will not cover any additional living expense due to the cancellation of a lease or agreement.

No deductible applies to this protection.

All other policy terms and conditions apply.

9/17/2019 11:53 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 36870067
By: Iris Collins
Filed: 9/17/2019 11:53 AM

# SCOPELITIS

### GARVIN LIGHT HANSON & FEARY

777 Main Street
Suite 3450
Fort Worth, TX  76102

*The full service transportation law firm*

www.scopelitis.com

Main (817) 869-1700
Fax (817) 878-9472

**JIM ELLMAN**
jellman@scopelitis.com

September 17, 2019

**Via E-Filing**
Danielle Jimenez
334th Judicial District Clerk
201 Caroline, 14th Floor
Houston, TX  77002

RE:   Cause No. 2019-67218; *Kenneth J. and Rena A. Kuratkos v. Allstate Vehicle and Property Insurance Company*; In the 334th Judicial District Court of Harris County, Texas

Dear Ms. Jimenez:

We filed our Original Petition and Demand for Jury Trial yesterday and noted our request for a jury in the petition. However, we failed to submit the fee for the jury trial, so we are submitting the jury fee payment with this filing.

Your assistance is greatly appreciated.  Should you have any questions, please do not hesitate to contact me.

Sincerely,

*/s/ Jim Ellman*

Jim Ellman

JDE:jht

4828-9279-5046, v. 1

Indianapolis • Chicago • Washington, D.C. • Los Angeles • Chattanooga
Detroit • Spokane • Dallas/Fort Worth • Milwaukee • Philadelphia/Mt. Ephraim

SERVICES OUTSIDE CALIFORNIA AND MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL CORPORATION
SERVICES IN MICHIGAN PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, PROFESSIONAL LIMITED LIABILITY COMPANY
SERVICES IN CALIFORNIA PROVIDED BY SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LIMITED LIABILITY PARTNERSHIP

10/3/2019 11:46 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 37353013
By: DANIELLE JIMENEZ
Filed: 10/3/2019 11:46 AM

Receipt Number: 864740
Tracking Number: 73672674

**COPY OF PLEADING PROVIDED BY PLT**

CAUSE NUMBER: 201967218

---

PLAINTIFF: KURATKOS, KENNETH J                      In the 334th Judicial

vs.                                                 District Court of

DEFENDANT:   ALLSTATE   VEHICLE   AND   PROPERTY     Harris County, Texas
INSURANCE COMPANY

---

CITATION

THE STATE OF TEXAS
County of Harris

TO: ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY BY SERVING ITS REGISTERED AGENT
CT CORPORATION

1999 BRYAN STREET SUITE 900

DALLAS TX 75201-3136

   Attached is a copy of PLAINTIFF'S ORIGINAL PETITION AND DEMAND FOR JURY TRIAL.

This instrument was filed on September 16, 2019, in the above numbered and styled
cause in the above Judicial District Court of Harris County, Texas, in
the courthouse in the City of Houston, Texas. The instrument attached describes the
claim against you.

   YOU HAVE BEEN SUED.  You may employ an attorney.  If you or your attorney do not
file a written answer with the District Clerk who issued this citation by 10:00 a.m.
on the Monday next following the expiration of twenty days after you were served this
citation and petition, a default judgment may be taken against you.

   ISSUED AND GIVEN UNDER MY HAND and seal of said Court, at Houston, Texas, this
September 17, 2019.



*Marilyn Burgess*

Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002

Generated By: NELSON CUERO

Issued at request of:
ELLMAN, JAMES DANIEL
777 MAIN STREET, STE. 3450
FORT WORTH, TX  76102
817-869-1702

Bar Number: 24106749



Tracking Number: 73672674

CAUSE NUMBER: 201967218

PLAINTIFF: KURATKOS, KENNETH J

vs.

DEFENDANT: ALLSTATE VEHICLE AND PROPERTY
INSURANCE COMPANY

In the 334th

Judicial District Court

of Harris County, Texas

OFFICER/AUTHORIZED PERSON RETURN

Came to hand at 3:00 o'clock P. M., on the 17th day of September, 20 19. Executed at (address) 1499 Bryan Street, Dallas in Dallas County at 1:48 o'clock P. M., on the 18th day of September, 20 by delivering to Allstate Vehicle and Property Co. C/o CT Corp defendant, in person, a true copy of this Citation together with the accompanying _____ copy(ies) of the _____ Petition attached thereto and I endorsed on said copy of the Citation the date of delivery.

To certify which I affix my hand officially this _____ day of _____, 20 _____.

FEE: $ _____

PSC 10712
ex. 3-31-20

_____ of _____

County, Texas

_____
Affiant

By: Gerard Hudspeth
Deputy

On this day, Gerard Hudspeth , known to me to be the person whose signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME on this 18th of September , 20 19

Maria A. Pulido
Notary Public

MARIA A. PULIDO
Notary Public, State of Texas
Comm. Expires 11-23-2019
Notary ID 130446746